May 2, 2005 I hereby certify on / 20 that the
foregoing document is true and correct copy of the

☐ electronic docket in the captioned case
☐ electronically filed original filed on _____
☑ original filed in my office on 5-20-05

Sarah A. Thornton
Clerk, U.S. District Court
District of Massachusetts
By: _Catherine M Gould_
Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

RECEIPT # _____
AMOUNT $ 250.00
SUMMONS ISSUED ✓
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED ____ CM6
BY DPTY. CLK. ____ 52005

---

LISA PENNICK,

          Plaintiff

v.

MICHELE GRENNON, GRENNON DESIGN

          Defendants

---

Civil Action No: _____

05 11060 WGY

MAGISTRATE JUDGE _Bowler_

## NOTICE OF REMOVAL

Defendants Michele Grennon and Grennon Design (incorrectly named as

"Michelle" in the state court action, hereinafter "Michele Grennon"), in support of their Notice of

Removal of the above-captioned action to the United States District Court for the District of

Massachusetts, respectfully submit that:

1.     The action entitled Lisa Pennick v. Michelle Grennon, Grennon Design, Civil

Action No. 05-1468 was commenced on or about April 15, 2005, by the Plaintiff filing her

complaint in the Superior Court in the Commonwealth of Massachusetts, Suffolk County.

Service of process was effected on Michele Grennon on April 21, 2005.

2.     In her Complaint, Lisa Pennick, a Massachusetts resident, asserts various contract

and tort claims against the defendant, Michele Grennon, a New Hampshire resident.  Plaintiff

claims damages exceeding $75,000.

3.     This Court has original jurisdiction over this case under the provisions of 28

U.S.C. § 1332.  Michele Grennon may remove the case to this Court pursuant to 28 U.S.C.

§ 1441 inasmuch as this is a civil action between citizens of different states in which the matter

in controversy is alleged to exceed $75,000. Removal is timely under the provisions of 28 U.S.C. § 1446(b) in that less than 30 days have passed since Michele Grennon's receipt of process.

4.    A true copy of this Notice of Removal is being served on the adverse party as of the date of filing.

5.    A true copy of this Notice of Removal will be promptly filed with the Clerk of the Suffolk County Superior Court.

6.    Pursuant to 28 U.S.C. § 1446, a copy of the Summons and Complaint, Plaintiff's Certificate of Service, and Michele Grennon's Assented-To Motion For Extension Of Time To Answer Or Otherwise Plead are attached hereto and constitute the only process, pleadings, and orders that have been filed and/or entered in this action. Certified copies of all documents filed in Superior Court in this matter will soon be filed in this Court.

WHEREFORE, defendants pray:

(a)    upon compliance with the filing and notice provisions of 28 U.S.C. § 1446 that this case stand removed to this Court;

(b)    the state court shall proceed no further in this case unless it is remanded; and

(c)    this Court shall make appropriate orders to implement the removal.

Respectfully submitted,
MICHELE GRENNON AND
GRENNON DESIGN
By its attorneys,

McLANE, GRAF, RAULERSON &
MIDDLETON, PROFESSIONAL
ASSOCIATION

2

Dated: May 19, 2005

By: 

Eric M. Sommers, BBO #649611
900 Elm Street
P.O. Box 326
Manchester, NH 03105
Tel: 603-628-1337
Fax: 603-625-5650
eric.sommers@mclane.com

## Certificate of Service

I hereby certify that on May 19, 2005, a copy of the foregoing Notice of Removal was forwarded by first class mail, postage prepaid, to:

Jacob T. Elberg, Esq.
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA 02210

Eric M. Sommers

3

**A**

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 05-1468

Lisa Pennick _____ , Plaintiff(s)

v.

Michelle Grennon, Grennon Design _____ , Defendant(s)

## SUMMONS



To the above-named Defendant:

You are hereby summoned and required to serve upon___ Jacob T. Elberg, Esq.

Dwyer & Collora, LLP

plaintiff's attorney, whose address is__600 Atlantic Ave., Boston, MA 02210___ , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, ~~Barbara J. Rouse~~, Esquire, at Boston, the_____20th_____ day of April _____, in the year of our Lord two thousand ___and five___ .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

(1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                SUFFOLK SUPERIOR COURT
                                            CIVIL ACTION NO.

---

**LISA PENNICK,**

       Plaintiff,

   v.

**MICHELLE GRENNON, GRENNON
DESIGN.**

       Defendants.

---

## COMPLAINT & JURY DEMAND

     Plaintiff Lisa Pennick ("Pennick") brings this civil action seeking damages she

has suffered as a result of Defendant Michelle Grennon's ("Grennon") unscrupulous

behavior and theft of the professional credit and financial rewards of Pennick's work.

Grennon, a wealthy homeowner, hired Pennick, a professional interior designer, to do

interior design work on her home ("the New Castle Project").  When the work was

completed, Pennick anticipated receiving the benefits of her efforts as the parties had

agreed.  Instead, she was humiliated as she watched her client represent that she had

designed the Project herself.  Worse, the homeowner used Pennick's work in fraudulent

and misleading advertisements to start a new business, misrepresented her role in the

work to secure and accept professional awards which properly belonged to Pennick, and

claimed credit for Pennick's work as she represented that the work she had financed she

had created as well.  Grennon caused substantial harm to Pennick through her deceitful

conduct.  Pennick brings the following claims against Grennon: violation of M.G.L. c.

93A, section 11 (triple damages); various common laws counts; declaratory relief under

M.G.L. c. 231A, § 1. Pennick seeks injunctive relief, declaratory relief, actual damages,

treble damages, and punitive damages based upon these claims. Pennick also seeks

declaratory judgments that: (1) Pennick, through Lisa Pennick Interiors, was the interior

designer on the New Castle Project, and (2) Grennon was a homeowner-client and not an

interior designer on the New Castle Project, and Grennon Design played no role in the

New Castle Project.

### Parties

1.    Plaintiff Lisa Pennick is an individual residing at 40 Cloutman's Lane,

Marblehead, Massachusetts 01945, and conducting business in Massachusetts under the

name of Lisa Pennick Interiors.

2.    Defendant Michelle Grennon is an individual residing at 98 Beach Hill Road,

New Castle, New Hampshire, and conducting business under the name of Grennon

Design in various towns and counties in Massachusetts, including Boston, Suffolk

County.

3.    Grennon Design is a sole proprietorship registered in New Hampshire on May 13,

2003, by Michelle Grennon at 98 Beach Hill Road, New Castle, New Hampshire.

### Jurisdiction

4.    Massachusetts has personal jurisdiction over Defendant Grennon pursuant to

M.G.L. c. 233A, and pursuant to M.G.L. c. 93A, § 11 (para. 8), in that the unfair or

deceptive acts or practices complained of occurred primarily and substantially within the

Commonwealth of Massachusetts.

2

## Factual Allegations

### I.    The Oral Agreement Between Pennick and Grennon

5.    In September, 2000, Grennon contacted Pennick in order to hire Pennick to redesign her New Castle, New Hampshire home. Grennon knew at this time that Pennick conducted business throughout New England as an interior designer through the design firm Lisa Pennick Interiors.

6.    At that time, Grennon was retired.

### A.    The Terms of the Agreement

7.    Grennon informed Pennick that she wanted Pennick to be the interior designer for her home. Grennon informed Pennick that the New Castle home was Grennon's residence.

8.    Grennon did not inform Pennick that Grennon intended to go into business as an interior designer, in competition with Pennick, following the completion of the Project, or that Grennon intended to use Pennick's work to advertise a new interior design business Grennon was planning.

9.    Pennick entered into a contract with Grennon on December 26, 2000, under which Pennick agreed to perform interior design services on Grennon's home in New Castle, New Hampshire. Grennon agreed to pay Pennick for her time. The parties understood that Pennick would be allowed to use the completed Project to advertise Pennick's interior design services. Because that understanding was part of the agreement, Pennick charged Grennon a rate below that which she would have charged for creating an advertisement for Grennon's future work or serving as a "ghost designer" for Grennon.

3

10.     As part of the oral agreement, Pennick gave Grennon a written retainer letter.  The "Retainer for Design Services" was written on Lisa Pennick Interiors letterhead, and addressed to Michelle Grennon.

11.     Pennick related a story to Grennon about a prior client who had attempted to take credit for Pennick's work, and Grennon was sympathetic.  Grennon's reaction and expression of sympathy led Pennick to feel secure that Grennon would not attempt to take credit for Pennick's work.

### B.     The Work Performed by Pennick

12.     Throughout the completion of the Project, Pennick acted as the sole interior designer.  After asking Grennon questions and showing her pictures to determine Grennon's taste, Pennick created interior design plans and ideas for the Project.  As clients normally do, Grennon offered comments on Pennick's ideas, offered her own, and approved Pennick's plans.  Grennon was no more involved in the creative process than many others of Pennick's homeowner-clients.  Pennick worked closely throughout the Project with Ben Auger Builders and Brendan McNamara, the architect on the job site.  For a substantial portion of the Project, Pennick worked on the home in New Hampshire while Grennon was on vacation in Florida and other trips.

13.     Pennick performed more than 1,300 hours of interior design work on the New Castle Project.  Pennick issued invoices to Grennon for 745 hours of interior design work.  Grennon paid Pennick's invoices, and gave no indication to Pennick that she questioned how many hours Pennick had devoted to the Project, or that she had any concerns regarding Pennick's performance as the Project's interior designer.

4

14.    After determining what interior design plans would be executed, Pennick

purchased items for Grennon's home.  As clients normally do, Grennon approved

Pennick's purchases.  In some cases, Grennon did not see items until Pennick had

purchased them and brought them to Grennon's home.  Grennon was no more involved in

the purchasing of items than many other of Pennick's homeowner-clients.

15.    Because Pennick anticipated the Project would be a success and Grennon had

agreed that Pennick would be able to use the Project to promote Pennick's interior design

business, Pennick agreed to work on the Project at a discounted rate and not to charge

Grennon for the entirety of hours Pennick worked.  Because of the parties' agreement

regarding the promotion of Pennick's work, Pennick anticipated that this Project would

result in substantial future business for her.

16.    Pennick completed the Project in August, 2002.  Grennon gave no indication at

any time during the Project that she had any criticism of Pennick's work, or that Grennon

believed Pennick was not the sole interior designer on the Project, or that Grennon

believed she was something other than a homeowner-client.

### C.    Grennon Breaches the Agreement by Preventing Pennick From Publicizing Her Work

17.    Following the completion of the New Castle Project in August, 2002, Pennick

arranged for Kitchen Design, a television show on Home & Garden Television (HGTV),

to shoot a segment on the Project.  Pennick put in substantial time and effort to arrange

for this publicity to promote her interior design business.

18.    On Friday late afternoon, three days before the show planned to shoot the

segment, Grennon called Pennick and demanded that the shoot be cancelled.  Grennon

told Pennick that she was too shy to shoot the segment and it was for that reason that she

5

wanted it cancelled. Grennon did not tell Pennick that Grennon intended to use the Project to promote an interior design business she intended to start herself, and that the reason she wanted the shoot cancelled was that allowing the shoot would make it more difficult for Grennon to take credit for Pennick's work.

19.    The late cancellation of the shoot has jeopardized Pennick's relationship with the producer and the show and will interfere with Pennick's ability to promote her work and her business in the future.

### D.    Grennon Starts Her Own Design Firm and Solicits a False Magazine Article Taking Credit For Work Done By Pennick

20.    Sometime after August 2002, Grennon started her own interior design business called Grennon Design. Grennon, through Grennon Design, offers interior design services in the New England area, and therefore competes with Pennick.

21.    Grennon solicited an article in Accent Home and Garden Magazine. Due to Grennon's efforts, the New Castle Project was the cover story of the January/February 2005 edition of the magazine, and an 11-page article featured the redesign of Grennon's home. See Accent Home and Garden Magazine cover and article attached hereto at Tab A.

22.    Based on information provided by Grennon, the article referred to Grennon as the interior designer on the Project, and made no mention of Pennick's role in the Project, despite including a section entitled "Assembling the Team for Renovation." Grennon intentionally did not include Pennick in the article in order to aid in Grennon's plan to take credit for Pennick's work and pass herself off as the interior designer on the Project.

23.    Grennon did not inform Pennick of her efforts to publicize the New Castle Project.

24.    The publication of the article was highly embarrassing to Pennick. Pennick had shown photographs of the Project to clients and prospective clients and described the Project accurately as her own. Individuals approached Pennick after the publication of the article that contradicted Pennick's account of her work on the Project, and have questioned Pennick about her work.

25.    The photographs Grennon gave to Accent Home and Garden Magazine were of Pennick's interior design work. Grennon caused Accent Home and Garden Magazine to give Grennon credit for the work shown in the photographs and not to give credit to Pennick. Grennon did not receive or even request Pennick's permission to publish these pictures of her work.

### E.    Grennon Places an Advertisement in a Magazine Falsely Claiming Pennick's Work to be Her Own

26.    Grennon also placed an advertisement for Grennon Design in the January/February 2005 edition of Accent Home and Garden Magazine. See Advertisement attached hereto at Tab B. The advertisement features a photograph of Pennick's interior design work. Included in the photograph are a couch Pennick designed for Grennon after having designed an identical couch for a previous client, and multiple distinctive items Pennick purchased for the Project without any participation by Grennon other than approval after Pennick placed the items in the New Castle home.

27.    Grennon did not receive or even request Pennick's permission to publish this picture of her work.

28.    The obvious intent of the advertisement was to give potential customers the mistaken impression that the photograph shows work of Grennon Design, although the

7

work shown is that of Lisa Pennick Interiors. In fact, upon information and belief, Grennon Design was not in existence at the time the Project was completed.

### F.    Grennon Makes False Statements to Potential Clients To Promote Her Interior Design Business

29.    On March 12, 2005, Grennon held a reception at her New Castle home to promote Grennon Design. The intent of holding the reception at her New Castle home was to promote the idea that Grennon and Grennon Design was the interior designer on the Project. The invitation to the reception featured the same picture of Pennick's work used by Grennon in the Accent Home and Garden advertisement. See Invitation attached hereto at Tab C. Grennon did not inform Pennick of her plans for the reception or offer to include Pennick in this publicity, and mailed the invitation to potential clients and members of the interior design community, including in Massachusetts.

### G.    Grennon Solicits and Receives Award Under False Pretenses

30.    Grennon entered the New Castle Media Room -- one of the rooms Pennick designed as part of the New Castle Project -- in the competition for the Luxury Living Awards. The Luxury Living Awards are "a juried home design competition that showcases exceptional living spaces and the talented design professionals who create them," presented by HomeWorks Sourcebook. See Luxury Living Awards brochure attached hereto at Tab D.

31.    Grennon was aware when she entered the competition that according to HomeWorks Sourcebook, the "Awards [would] be heavily promoted through a high-profile media campaign reaching over 200,000 affluent households." See Luxury Living Awards website attached hereto at Tab E

8

32.    HomeWorks Sourcebook, the organizer of the Luxury Living Awards and the source of much of the publicity surrounding the Awards, is located in Boston, Massachusetts. The Luxury Living Awards reception is held in Boston, Massachusetts.

33.    Grennon entered the New Castle Media Room under the team name "Grennon Design."

34.    As part of the application form, Grennon prepared a "Companies Release," which required "signature for all companies/professionals on the team." See Luxury Living Awards Companies Release attached hereto at Tab F.

35.    When Grennon initially prepared the Release to submit the Media Room for the award, she did not include Pennick or Lisa Pennick Interiors, although the form required that the list include "all the major contributors to the Project/living space and that said team members performed the work as represented." See id.

36.    Included in the list of major contributors were multiple businesses Pennick had dealt with throughout the Project, and which had previously never dealt with Grennon.

37.    Grennon did include Grennon Design as a "major contributor to the Project/living space" and as the "team name," although Grennon Design was not in existence at the time the Project was completed.

38.    Only after Pennick learned of the entrance of the New Castle Media Room in the Luxury Living Awards Competition, and informed HomeWorks Sourcebook that Grennon was attempting to steal credit for her work, did Grennon seek to include Pennick's name on the list of "team members." But Grennon then refused to include Pennick on the list when Pennick listed "head interior designer" next to her name and listed "homeowner" next to Grennon's name.

9

39.    When HomeWorks Sourcebook sought to investigate Pennick's claim that she was the true interior designer of the Project, Grennon denied that Pennick was the sole interior designer on the Project, and continued to present herself as the Project's primary interior designer. Grennon solicited Ben Auger and Brendan McNamara to support her false representations through promises of future business opportunities.

40.    Grennon falsely told HomeWorks Sourcebook representatives, including John Kenney and Christina Tassi, that Grennon had had all the creative ideas on the New Castle Project, and Pennick was nothing more than a gopher for her -- going to purchase items in stores where Grennon did not have accounts. In making such statements, Grennon claimed that Pennick, a professional interior designer for several years, is inferior in ability to a brand-new designer (Grennon), and that Pennick had been lying continually about her abilities and her work.

41.    On April 6, 2005, at a reception for hundreds of people throughout the interior design community, the New Castle Media Room was the Gold (second place) winner of the Luxury Living Awards' "Home Theatre" category. Due to Grennon's false representations, the award was given to Grennon Design.

42.    Pennick's name was listed among the award recipients only after Pennick contacted HomeWorks Sourcebook. Even then, Grennon's claims caused Pennick to be listed below Grennon, implying that Pennick is inferior in ability to a brand-new designer.

43.    The announcement in front of hundreds of people throughout the interior design community was embarrassing for Pennick, who is well-known throughout the

10

community, because many people throughout the community knew that Pennick had claimed to be the interior designer for the New Castle Project.

44.    Having discussed with Pennick a previous client's actions in taking credit for Pennick's work, and knowing Pennick's reaction to that, Grennon knew that her actions would cause Pennick to experience emotional distress.

45.    Grennon has never paid Pennick for the right to use Pennick's work in Grennon's advertisements or promotional activities, nor for the right to take sole credit for Pennick's work.

46.    Upon information and belief, Grennon and Grennon Design have obtained numerous clients due to Grennon's false representations and publicity falsely taking credit for Pennick's work. Upon information and belief, in addition to the advertisements, article, reception, Grennon meets with clients and potential clients in an office for which Pennick did the interior design work, yet Grennon leads clients and potential clients to believe Grennon did the work and does not inform them that Pennick created the interior design for the office.

47.    Grennon's actions have caused Pennick significant embarrassment and emotional distress.

### COUNT I - M.G.L. c. 93A, Section 11

48.    Pennick realleges and incorporates herein by reference the allegations of paragraphs 1-47 above.

49.    Both Grennon and Pennick are engaged in trade or commerce.

50.    Grennon, through false representations to Pennick, secured Pennick's services at a discounted rate.

11

51.    Grennon's false representations to Pennick were unfair and deceptive trade practices which were material, which were undertaken willfully and knowingly, and which caused proximate damage to Pennick in violation of M.G.L. c. 93A, § 11.

52.    Grennon, through false representations to potential clients, took credit for Pennick's work and used that work to compete with Pennick for future business.

53.    Grennon's false representations to potential customers, Accent Home and Garden Magazine or its agents, and HomeWorks Sourcebook were unfair and deceptive trade practices which were material, which were undertaken willfully and knowingly, and which caused proximate damage to Pennick in violation of M.G.L. c. 93A, § 11.

54.    As a result of the foregoing, Pennick has suffered actual damages in an amount to be determined at trial, plus treble damages and attorneys fees.

## COUNT II - BREACH OF CONTRACT

55.    Pennick realleges and incorporates herein by reference the allegations of paragraphs 1-47 above.

56.    Grennon's refusal to allow Pennick to promote her business through the Kitchen Show violates the terms of the oral agreement between Grennon and Pennick.

57.    Grennon's use of Pennick's work not for her own personal enjoyment but for business purposes violates the oral agreement between Grennon and Pennick.

58.    As a result, Pennick has suffered damages in an amount to be determined at trial.

## COUNT III -
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

59.    Pennick realleges and incorporates herein by reference the allegations of paragraphs 1-47 above.

12

60.    Under Massachusetts common law, there exists a covenant of good faith and fair dealing, pursuant to which neither party to a contract shall do anything which has the effect of destroying or damaging the right of the other party to receive the fruits of the contract.

61.    Grennon's false statements to Pennick at the time of the contract's formation, her actions to avoid her contractual obligations to Pennick, and her use of Pennick's services under the contract to compete with Pennick, violate the covenant of good faith and fair dealing.

62.    As a result of Grennon's violations of the covenant of good faith and fair dealing, Pennick has suffered damages in an amount to be determined at trial, plus attorneys' fees.

### COUNT IV - DECEIT

63.    Pennick realleges and incorporates herein by reference the allegations of paragraphs 1-47 above.

64.    Grennon made representations to Pennick that if she performed interior design services on Grennon's home, Pennick would be allowed to use the Project to promote Pennick's business.

65.    At the time Grennon represented that Pennick would be allowed to use the Project to promote Pennick's business, Grennon intended to interfere with any such efforts and instead use the work to promote Grennon's planned business.

66.    Grennon made representations to Pennick that she would not attempt to take credit for Pennick's work.

67.    At the time Grennon represented that she would not attempt to take credit for Pennick's work, Grennon intended to take credit for Pennick's work.

13

68.    Pennick took action on behalf of Grennon in reliance of her representations that Pennick would be able to publicize the Project and that Grennon would not attempt to take credit for Pennick's work.

69.    Grennon received discounted services from Pennick as a result of these actions. As a result, Pennick has suffered damages in an amount to be determined at trial.

### COUNT V - QUANTUM MERUIT/UNJUST ENRICHMENT

70.    Pennick realleges and incorporates herein by reference the allegations of paragraphs 1-47 above.

71.    Pennick performed services for Grennon with the expectation of being able to publicize the Project to promote Pennick's business, and with the expectation that Grennon would not use Pennick's work to compete with her for future clients.

72.    Grennon accepted the services of Pennick with knowledge that Pennick was performing services on her behalf with the expectation of being able to publicize the Project to promote Pennick's business, and with the expectation that Grennon would not use Pennick's work to compete with her for future clients.

73.    Despite Pennick's outstanding work on the Project, Grennon has interfered with Pennick's ability to publicize the Project to promote Pennick's business, and has instead used Pennick's work to compete with her and deprive Pennick of valuable future business.

74.    As a result of Grennon's false representations, unlawful conduct and tortuous activities, Grennon has obtained numerous clients and has received substantial profits.

75.    Grennon has thus been unjustly enriched by her unlawful conduct, and Pennick has suffered damages in an amount to be determined at trial.

14

## COUNT VI - COPYRIGHT

76.    Pennick realleges and incorporates herein by reference the allegations of paragraphs 1-47 above.

77.    Under Massachusetts common law, common law copyright exists such that the right of property which an author has in his works continues until by publication a right to their use has been conferred upon or dedicated to the public.

78.    Pennick was the author of the interior designs in the New Castle Project.

79.    Pennick did not publish her work in any way that would allow Grennon to publish Pennick's work as her own.

80.    As a result, Pennick has suffered damages in an amount to be determined at trial.

## COUNT VII - DECLARATORY JUDGMENT

81.    Pennick realleges and incorporates herein by reference the allegations of paragraphs 1-47 above.

82.    Grennon has claimed to have been the interior designer on the New Castle Project and to have been other than the homeowner-client on the Project.

83.    Grennon has denied that Pennick was the sole interior designer on the New Castle Project.

84.    Accordingly, an actual and justiciable controversy exists between Pennick and Grennon as to the design of the New Castle Project.

85.    Pennick seeks a declaratory judgment that she, through Lisa Pennick Interiors, was the sole interior designer on the New Castle Project.

86.    Pennick also seeks a declaratory judgment that Grennon was a homeowner-client and not an interior designer on the New Castle Project, and that Grennon Design played no role in the New Castle Project.

## COUNT VIII -

## DEFAMATION, LIBEL, SLANDER, AND INJURIOUS FALSEHOOD

87.    Pennick realleges and incorporates herein by reference the allegations of paragraphs 1-47 above.

88.    Grennon's statements to representatives of HomeWorks Sourcebook that Pennick was nothing more than a gopher on the New Castle Project were defamatory.

89.    Grennon's publication of a list of the parties responsible for the New Castle Project with Pennick's name below Grennon's was defamatory.

90.    Grennon's statements to clients, potential clients, and others within the interior decorating industry that Pennick was nothing more than a gopher on the New Castle Project were defamatory.

91.    Grennon was aware her statements were false when she made them.

92.    Grennon was aware that her statements would caUse harm to Pennick's business and reputation, and would caUse Pennick emotional distress.

93.    Pennick suffered actual injury or harm as a result of Grennon's statements and their publication.

## PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff Lisa Pennick prays for relief as follows:

1.    A judgment, in an amount to be determined at trial, of actual and punitive damages sufficient to account for all damages suffered by Pennick due to Grennon's

16

infringement, breaches of contract, and other unlawful and tortuous activities, plus treble damages under M.G.L. c. 93A, section 11, attorney's fees, interest and costs.

    2.    A declaratory judgment that Pennick, through Lisa Pennick Interiors, was the interior designer on the New Castle Project.

    3.    A declaratory judgment that Grennon was solely a homeowner-client, and not an interior designer on the New Castle Project, and that Grennon Design played no role in the New Castle Project.

    4.    A permanent injunction enjoining Grennon from future actions of publicity involving the New Castle Project and from otherwise taking credit for the New Castle Project as anything other than a homeowner-client of Pennick and Lisa Pennick Interiors.

    5.    Such other relief as the Court may deem appropriate.

### Jury Demand

Plaintiff requests a trial by jury on all matters so triable.

Respectfully submitted,

Lisa Pennick

By her attorneys,

Thomas E. Dwyer, Jr. (BBO # 139660)
Jacob T. Elberg (BBO # 657469)
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA 02210
(617) 371-1000
(617) 371-1037 (fax)

Dated: April 15, 2005

17



# ACCENT

## HOME & GARDEN

January/February 2005

A transformed Cape
A primrose primer
Welcoming entryways
Pizzazz from paint
Food and wine for winter
Adventures in home-building



US $4.95 Canada $5.95

0 1>

7 25274 99986 6

Published in Portsmouth, N.H.

B



MICHELE GRENNON
*Allied Member ASID*

603.436.6728

michele@grennondesign.com

GRENNON DESIGN



*Designer jewelry
in gold & silver*

*Poetic engraved
messages of romance
& inspiration*

*Experience our passion for people,
product & performance.*

JEWELRY
CREATIONS

388 Central Avenue • Dover, NH
603-749-3129
www.jewelrycreationsinc.com

JEANINE PAYER

C





MICHELE GRENNON
*Allied Member, ASID*

603 436.6728

michele@grennondesign.com



GRENNON DESIGN

Copyright © Dan Bair/Blind Dog Photo, Inc.





*Salem, MA 01970*

01970+3899  04

D

## Charity partners



**THE CAM NEELY FOUNDATION FOR CANCER CARE**

The Cam Neely Foundation for Cancer Care provides comfort, support and hope to cancer patients and their families through its' two programs – The Neely House and The Neely Cancer Fund.
CamNeelyFoundation.org

**CoSo** Copley Society of art

In its 125th year, the Copley Society fosters the visual arts through member exhibitions and educational outreach while helping to develop the careers of emerging and young artists.
CopleySociety.org

**Building Materials Resource Center**

The BMRC provides lower income families with affordable building supplies and practical education. It accepts donations of quality used and surplus materials from homeowners and construction firms.
BostonBMRC.org

**The Melissa Rose Kradin Foundation**

The Kradin Foundation supports the families of critically ill children and funds research to advance the treatment of childhood cancers.
MRKFoundation.org

## Trade sponsors

 **IFDA**

 **NKBA**

BUILDERS ASSOCIATION OF GREATER BOSTON

**NARI**

 AS7

 BSLA

## About HomeWorks Sourcebook

**HomeWorks**

*HomeWorks Sourcebook* is a local home design guide featuring in-depth profiles of the finest design professionals. Our unique 9-step credential check ensures that you'll find the most reputable contractors, retailers, and service providers.
HomeWorksSourcebook.com

---

**HomeWorks** SOURCEBOOK

PRESENTS

## Luxury Living *Rewards*

CELEBRATING NEW ENGLAND'S MOST BEAUTIFUL LIVING SPACES



*Please join us*

for an elegant evening to announce the winners of the 1st annual Luxury Living Awards

**WEDNESDAY, APRIL 6, 2005**

*Reception and Dinner*

*Cityview Ballroom, World Trade Center Boston*

PROCEEDS TO BENEFIT CHARITY



# Luxury Living Awards



*Located at*
Residential**Design 2005**

*In partnership with*
homeportfolio

THE LUXURY
MARKETING
COUNCIL

*Join* an engaging mix of homeowners, design professionals, and local personalities as we celebrate New England's most extraordinary home design.

The sensational evening unfolds in three parts:

- Reception on the Residential Design 2005 show floor

- Private awards reception, with lively mingling and creative design vignettes

- Dinner followed by a visually captivating live show to announce the winners

Proceeds will benefit the good works of four leading Boston charities (see back).

## Program

6:00 – 7:00    Residential Design reception

7:00 – 8:00    Luxury Living Awards reception

8:00 – 10:00    Dinner and awards presentation

For more information, please visit www.HomeWorksSourcebook.com or contact Divya Thomas at dthomas@hwmg.com or 617-292-7317.

## About the Awards

The Luxury Living Awards are a juried home design competition that showcases exceptional living spaces and the talented design professionals who create them.

With the support of leading trade groups, over 6,000 local designers, architects, remodelers, and others are invited to submit their finest work.

Teams compete in 10 categories, plus 'best in show.'

| | |
|---|---|
| Kitchen | Casual living |
| Bathroom | Home theatre |
| Living room | Specialty space |
| Dining room | Outdoor living |
| Master suite | Landscape & garden |

Winners are selected anonymously by a jury of respected professionals from the home design, real estate, and media fields.

*Sponsors*

SWA Landscape Design Associates

SwimEx

GerrityStone

Dover
FINE CABINETRY, BATH & CABINETRY

Total Home Technology
from Life Made Easier™

WOLFERS
The Lighting Experts

THOS. MOSER
CABINETMAKERS

E



# HomeWorks
## SOURCEBOOK

Featuring the Best Pre-Qualified
Contractors, Retailers, and Service Providers

COMPANIES | RESOURCES | SUBSCRIBE | ABO



CELEBRATING BOSTON'S MOST BEAUTIFUL LIVING SPACES

## Luxury
## *Living*
### *Awards*

The Luxury Living Awards is an exclusive new design competition that reco;
England's most beautiful living spaces and the professionals that create them.

The Awards are a serious competition involving the juried selection of winne
interior and exterior living space categories, including kitchen, bath, living ro
room, casual living, home theater, specialty space, outdoor living, landscape,

The Awards will be heavily promoted through a high-profile media campaigr
over 200,000 affluent households. The events, print, and web campaign will (
outstanding visibility for all Luxury Living winners, sponsors, and advertiser;

The Awards are presented by HomeWorks Sourcebook with the invaluable su
leading trade organizations, including ASID, BAGB, IFDA, NARI, NKBA, a
Marketing partners such as the Luxury Marketing Council and HomePortfolio
to drive increased visibility.

**REQUEST MORE INFORMATION HERE**

**An Exciting Competition**
The goals and details

**An Exclusive Audience**
A high-profile multi-media campaign

**3 Ways to Participate**
Enter, sponsor, or advertise

## An Exciting Competition

The goal of the Luxury Living Awards is to promote outstanding home & gai

the
homeowning public, and especially to the affluent homeowners who commis:
design. The Awards focus on complete interior and exterior living spaces an:
homeowner's entire remodeling or new construction experience - design, buil
and furnishings.

To reflect this, the Awards recognize the entire group of design, build, and re
professionals that contributed to creating the space (whether these firms form
together as a team or not). Eligible spaces include both recently remodeled ar
built properties.

A jury of respected professionals will select winners will in 11 interior and e;
space
categories, plus 'best in show'. Categories include: kitchen, bathroom, master
bedroom, living room, dining room, casual living, home theater, specialty sp;
living, and
landscape.

Entries may be submitted for any major remodeling, redecorating, or new cor
project completed since Jan, 1, 2003. **Entries are due by February 15, 2005**

---

## An Exclusive Audience

A high-profile multi-media campaign will drive outstanding awareness of the
especially among Boston's wealthiest homeowners. The campaign will reach
high-end homes via events, print, and the web.

### Awards Dinner
Winners will be announced on April 6, 2005 at a premier event during Build

Residential Design 2005 show.

### Luxury Living Guide
*Luxury Living New England*, the official Awards guide, will present a sophist
the
best home & garden design in New England. The guide will reaching over 4C
including copies mailed to all homes in the top 3%.

### Luxury Living Supplement
A new section of *HomeWorks Sourcebook* will feature winning teams. Reach
homes in the top 12%, *HomeWorks Sourcebook* provides an insider's guide tc
home & garden professionals.

### Web
The Awards will be featured on 3 websites - LuxuryLivingAwards.com,
HomeWorksSourcebook.com, and HomePortfolio.com - with over 120,000 v
year.

### Bottom line

The Luxury Living Awards will deliver exceptional visibility for all participa
sponsors, and advertisers.

# 3 Ways to Participate

### 1)  Enter to win
Award winners will receive not just peer recognition, but also the kind of m
that money can't buy.

### 2) Be a sponsor
*Premier*, *Elite*, and *Cornerstone* sponsorships provide an affordable way to re
200,000 high-end households.

### 3) Be an advertiser
Reaching 40,000 homes, *Luxury Living Boston*, the official Awards gui
advertisers outstanding visibility among the region's top 3% of households.

**REQUEST MORE INFORMATION HERE**
**or call Divya Thomas at 617.292.7317**

Home | Advertise | Disclaimer | Contact Us

Copyright 2003 HomeWorks Media Group, Inc. All Rights Reserved.
Website design by Genevate Corp.

F

**Luxury Living** *Awards*


*Presented by:*
HomeWorks SOURCEBOOK

# 6. COMPANIES RELEASE
(for signature by all companies/professionals on the team)

Team name  New Castle Media Room

The undersigned, representing all the home & garden companies and/or professionals in the entering team, agree as follows:

- The home & garden companies/professionals cited herein represent all the major contributors to the project/living space and that said team members performed the work as represented
- The data, photographs, and all other submitted information is true and pertain to the represented project
- The team agrees to all the rules, regulations, and guidelines of the Luxury Living Awards
- HomeWorks Media Group, Inc. (HWMG) assumes no responsibility for the loss or damage of materials
- The team, and/or its individual members, represents and warrants that it is authorized and possesses all of the necessary rights to utilize the submitted materials. The team and its members further represent and warrant that nothing contained in the materials: a) infringes upon others' intellectual property rights, b) makes false or unwarranted claims, and/or c) is in violation of any law or regulation.
- HWMG is granted a perpetual license to use, with proper attribution, any of our submitted materials for judging, promotion, or other Luxury Living Awards purposes. Such usage may include, but is not limited to, creating, producing, reproducing, and/or distributing any type of event, print, online, video, or other media format that features the Luxury Living Awards and/or its winners

Further, if our team is selected as a winner, the team and all its members also agree:

- All team members will, within reason and upon advance notice, make themselves available for meetings interviews, telephone calls, etc. to execute media and/or promotional opportunities as they may arise
- All advertising, marketing collateral and/or business literature used by any team member will, when such award is mentioned, clearly state the title of the award, the level of award (platinum, gold, silver), the category and the year in which the award was presented.

All companies and/or professionals should sign below.  Signatures may be provided *separately* on multiple sheets.

DATE _4- 21 -05_

TIME _1:25_     AM/PM

LOCATION _New Castle_

MODE OF SERVICE

IN HAND     ABODE

DEPUTY SHERIFF

COUNTY OF ROCKINGHAM, N.H

%JS 44   (Rev. 11/04)

# CIVIL COVER SHEET   05 11060 WGY

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)   PLAINTIFFS
LISA PENNICK

### DEFENDANTS
MICHELLE GRENNON

**(b)** County of Residence of First Listed Plaintiff   ESSEX, MA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   ROCKINGHAM, NH
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Jacob T. Elberg, Esq., Dwyer & Collora, LLP, 600 Atlantic Avenue, Boston, MA 02210, (617) 371-1000

Attorneys (If Known)
Eric M. Sommers, Esq., McLane, Graf, Raulerson & Middleton, PA, 900 Elm Street, Manchester, NH 03105, (603) 625-1260

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☒ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                and One Box for Defendant)

|                                      | PTF | DEF |                                                  | PTF | DEF |
|--------------------------------------|-----|-----|--------------------------------------------------|-----|-----|
| Citizen of This State                | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State             | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation                                   | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|----------|-------|--------------------|------------|----------------|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 871 IRS—Third Party | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | 26 USC 7609 | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | ☐ 950 Constitutionality of |
| | Other | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☐ 1   Original
Proceeding

☒ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
another district
(specify)

☐ 6   Multidistrict
Litigation

☐ 7   Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332
Brief description of cause:
Breach of interior design contract

## VII. REQUESTED IN
COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
IF ANY
(See instructions:)   JUDGE _____   DOCKET NUMBER _____

DATE   5/19/05

SIGNATURE OF ATTORNEY OF RECORD
Eric M. Sommers, bbo 649611

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

05 11C50 WGY

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1.  Title of case (name of first party on each side only) __LISA PENNICK V. MICHELLE GRENNON__

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

    | | | |
    |---|---|---|
    | [✔] | I. | 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT. |
    | [ ] | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121<br>740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.   for patent, trademark or copyright cases |
    | [✔] | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,<br>315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,<br>380, 385, 450, 891. |
    | [ ] | IV. | 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,<br>690, 810, 861-865, 870, 871, 875, 900. |
    | [ ] | V. | 150, 152, 153. |

3.  Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

    _____

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

    YES _____   NO [✔]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

    YES _____   NO [✔]

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

    YES _____   NO _____

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

    YES _____   NO [✔]

7.  Do **all** of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

    YES _____   NO [✔]

    A.   If yes, in which division do **all** of the non-governmental parties reside?

    Eastern Division [ ]     Central Division [ ]     Western Division [ ]

    B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

    Eastern Division [✔]     Central Division [ ]     Western Division [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

    YES [ ]   NO [✔]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME __Eric M. Sommers, Esq.__    560 69611

ADDRESS __McLane, Graf, Raulerson & Middleton, PA, 900 Elm Street, Manchester, NH 03105-0326__

TELEPHONE NO. __(603) 625-1260__

(CategoryForm.wpd - 5/2/05)