UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

LISA PENNICK,

        Plaintiff

v.

MICHELE GRENNON, GRENNON DESIGN

        Defendants

Civil Action No: 05-CV-11060-WGY


**MICHELE GRENNON AND GRENNON DESIGN'S MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS AND/OR TRANSFER**

**INTRODUCTION**

This is one of two actions pending between Lisa Pennick and Michele Grennon arising out of the design and renovations to Michele Grennon's New Castle, New Hampshire home (the "Project").  Grennon, the creator of the Project's design, hired Pennick after the Project had begun.  Grennon hired Pennick not as a designer for the Project, but rather to help her with access to interior design showrooms and design centers in order for Grennon to obtain various items needed to realize her own vision for the Project.  Pennick was paid for her work and the Project was completed around April of 2002.

Recently, Grennon's design has begun to receive significant attention and praise from the interior design industry.  In early 2005, the Project was featured in Accent on Home and Garden magazine.  In April 2005, the Project's media room received a Luxury Living Award presented by HomeWorks Sourcebook.  In light of these recent accolades, Pennick now claims she was the Project's sole designer.  She sent several letters to Grennon threatening to sue unless Pennick receive credit as the Project's designer.  In addition, she recently threatened to file a complaint

with the American Society of Interior Designers to seek Grennon's expulsion from that organization. Pennick has told people in the interior design community that Grennon "stole" her design. As a result, suits were filed by both Grennon and Pennick on April 15, 2005.

Because the separate actions filed by Grennon and Pennick are nearly identical (Grennon's action includes Federal questions), judicial economy would be served by dismissing the Massachusetts action and consolidating both cases in the United States Federal District Court for the District of New Hampshire. First, the New Hampshire District Court has subject matter and personal jurisdiction over all the claims and parties. Second, virtually all of the evidence and alleged harms are centered in New Hampshire: (a) the center of the controversy—the interior of Grennon's home—is located there; (b) most of the witnesses to the renovations live there as well;[1] and (c) the design work was performed there, and the drawings for the project are located in either New Castle or with the architect in Eliot, Maine, ten minutes away. Third, New Hampshire law is likely to govern the key legal issues, that of Grennon and Pennick's agreement regarding Pennick's role in the Project. Fourth, having the case proceed in the New Hampshire District Court does not pose any inconvenience to the parties as the Massachusetts and New Hampshire District Courts are only about 70 miles apart. Finally, the interest of judicial economy and trial efficiency warrant consolidation of the cases in New Hampshire since the New Hampshire District Court's docket is far less busy and will allow for a quicker resolution of the dispute.

Accordingly, Grennon respectfully requests that this Court dismiss Pennick's Massachusetts action and/or transfer it to the United States District Court for the District of New Hampshire.

---

[1] The project's architect, Brendan McNamara has his office in Eliot, Maine, just across the Piscataqua river from Portsmouth, New Hampshire.

2

## FACTS

In November of 1999, Grennon purchased a waterfront house at 98 Beach Hill Road, New Castle, New Hampshire, with an eye toward renovating and redesigning it for use as a residence (the "Project"). Grennon Declaration ¶¶ 1-2. Brendan McNamara Residential Design of Eliot, Maine, was the architect on the Project and Ben Auger Builders of Portsmouth, New Hampshire, performed the renovations. Grennon Declaration ¶¶ 3-4. McNamara prepared all the drawings for the projects based upon Grennon's design concepts without involvement from Pennick. Grennon Declaration ¶ 8. Prior to working on the Project, Grennon had worked for various interior design businesses and had held numerous positions as a designer from around 1987 to 2000. Grennon Declaration ¶ 5.

In or around December, 2000, at a meeting at Grennon's New Castle home, Grennon hired Pennick to help her gain access to various design centers and showrooms and to help with obtaining various materials and furnishings for the Project. Grennon Declaration ¶ 7; Complaint, Pennick v. Grennon, No. 05-1468 (Mass. Sup. Ct. filed April 15, 2005) (the "Pennick Complaint") ¶ 9. Grennon and Pennick did not have a written contract. Grennon Declaration ¶ 7; Pennick Complaint ¶ 10. At no time during the project did Pennick prepare any drawings, sketches or finish schedules illustrating any design concepts, floor plans, or schematic plans for the interior installations. Grennon Declaration ¶ 8.

In April, 2002, Grennon held an Open House at her home in New Castle to celebrate the completion of the Project. Grennon Declaration ¶ 9. The January/February 2005 issue of Accent on Home and Garden magazine (published in Portsmouth, New Hampshire) featured an article on Grennon's New Castle home. Grennon Declaration ¶ 10; Pennick Complaint ¶ 21. In April 2005, a portion of the Project—the media room—received a Luxury Living Award presented by

HomeWorks Sourcebook, in Boston, Massachusetts.  Grennon Declaration ¶ 11;  Pennick Complaint ¶¶  30.

On April 15, 2005, Grennon filed a complaint in New Hampshire Federal District Court. Michele Grennon v. Lisa Pennick, Case No. 05-CV-140-JD, attached as Exhibit A with the docket sheet (showing the filing date of the complaint).  In that case, Grennon seeks preliminary and permanent injunctive relief, declaratory relief, damages arising from false and misleading statements made by Pennick and relief for related claims involving false advertising under the Lanham Act, 15 U.S.C. § 1125, copyright ownership under the Copyright Act of 1976, 17 U.S.C. § 101 et seq.,  unfair competition, defamation, commercial defamation, intentional interference with contractual relations, and unjust enrichment.

On April 15, 2005, Pennick filed this case in Massachusetts Superior Court, Suffolk County, seeking declaratory relief that Pennick was the interior designer for Grennon's New Castle home, and relief for related claims involving unfair and deceptive trade practices, contract, deceit, unjust enrichment, Massachusetts common law copyright,[2] and defamation. Attached as Exhibit B is a copy of the Massachusetts Superior Court Docket Sheet showing the corresponding filing date.  On May 20, 2005, Grennon removed the Superior Court action pursuant to 28 U.S.C. § 1332.  As of the date of this motion, neither party has answered the respective complaints.

---

[2] State common law copyright is no longer a viable cause of action since it has been preempted by the Copyright Act of 1976.  17 U.S.C. § 301.  As such, the central dispute in this case—the ownership of the design of Michele Grennon's house—can only be decided in Federal court.  Venue was thus improper in the Massachusetts state court as to any claims relating to the ownership of design rights.  Indeed, all of Pennick's common law claims may be preempted to the extent that they are equivalent to any of the exclusive rights within the general scope of the Copyright Act.  John G. Danielson, Inc. v. Winchester-Conant Props., Inc., 186 F. Supp. 2d 1, 27 (D. Mass. 2002) (quoting 17 U.S.C. § 301).  If that were the case, the Massachusetts Superior Court would never have had jurisdiction over any of Pennick's claims. Defendants reserve the right to raise this defense in their subsequent pleadings.

## ARGUMENT

**I.    The Motion To Dismiss and/or Transfer Should Be Decided Before Proceeding Further**

On May 25, 2005, Defendants submitted an agreed-to motion to enlarge their time for filing and answer or otherwise plead until June 1, 2005, which was granted by the court.  In the New Hampshire case, the parties agreed to enlarge Pennick's time to answer or otherwise plead until June 6, 2005.  Defendants submit this Rule 12 and 28 U.S.C. § 1404 motion as their pleading in response to the requested enlargement.  See, e.g., United States v. Cinemark, 66 F. Supp. 2d 881, 884 n.1 (N.D. Ohio 1999) (motion to dismiss even if on grounds other than 12(b) or to transfer is properly filed as a court ordered reply).  In order to avoid the possibility of unnecessary and duplicative filings, Grennon respectfully requests that the Court temporarily stay further proceedings and deadlines unrelated to this motion to transfer, (such as answers and pretrial conferences) until it has the opportunity to rule on this motion.  Such a stay will not prejudice the plaintiff as this case is only forty-five days old and plaintiff has not yet filed a responsive pleading in the sister case in New Hampshire.

**II.    The Court Should Transfer This Case Because The Balance Of Factors Weighs Heavily In Favor Of Transfer To The United States District Court For The District Of New Hampshire.**

The Court should dismiss this action and transfer it to the New Hampshire District Court where it can be consolidated for trial with the case pending in that Court.  28 U.S.C. § 1404(a), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any action to any other district or division where it may have been brought."  In considering whether to transfer a case, a court may exercise broad discretion as  "Congress . . . intended to permit courts to grant transfers upon a lesser showing of inconvenience" than under

the older doctrine of *forum non conveniens*." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 184 F. Supp. 2d 55, 85-86 (D. Mass. 2001).

When considering a motion to transfer, a court must determine (1) whether the action might have been brought in the proposed transferee district; and (2) whether a transfer to that district is appropriate considering the convenience of the parties and witnesses and the interests of justice. See Gentile v. Franklin Sports, Inc., 2001 U.S. Dist. LEXIS 17540, *2 (D. Mass. 2001). In addition to the convenience of parties and witnesses, the factors to be considered by the court include the availability of documents; the possibility of consolidation; and the order in which the district court obtained jurisdiction. Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000). In making this determination, a court may weigh a number of factors including (1) the plaintiff's choice of forum, (2) the relative convenience of the parties, (3) the convenience of the witnesses and location of documents, (4) any connection between the forum and the issues, (5) the law to be applied and (6) the state or public interests at stake. Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 17 (D. Mass. 2002). A decision regarding a transfer of venue is committed to the discretion of the district court. Codex Corp. v. Milgo Electronic Corp., 553 F.2d 735, 737 (1st Cir. 1977), cert. denied, 434 U.S. 860 (1977).

A.    The New Hampshire District Court Has Jurisdiction Over Pennick's Action

Pennick could have properly brought her case in the New Hampshire District Court under 28 U.S.C. § 1332. As stated in the Grennon's Notice of Removal, complete diversity exists between the parties. Defendant Grennon is a resident of New Hampshire and the Plaintiff, Pennick, is a resident of Massachusetts. Pennick's claims exceed $75,000. In addition, venue would be proper in New Hampshire pursuant to 28 U.S.C. § 1391(a) because Grennon resides in New Hampshire and a substantial part of the events giving rise to Pennick's claim occurred in

New Hampshire, including the formation of any contract between Grennon and Pennick and the creation of the design at issue.

      B.    <u>The First-File Rule is not a Factor Because the Actions Were Filed Simultaneously</u>

The First Circuit has held that "[w]here identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice of venue decision." <u>Cianbro Corp. v. Curran-Lavoie, Inc.</u>, 814 F.2d 7, 11 (1st Cir. 1987). "While the first-filed rule ordinarily may be a prudent one, it is so only because it is sometimes more important that there be a rule than that the rule be particularly sound." <u>Codex Corp. v. Milgo Electronic Corp.</u>, 553 F.2d 735, 737 (1st Cir. 1977). Here, both cases were filed on April 15, 2005. Thus, the first-filed rule does not apply.

      C.    <u>New Hampshire Is More Convenient For The Witnesses; Either Court Is Convenient For The Parties</u>

Other factors to be considered in determining whether transfer is warranted include (1) the convenience of the parties; and (2) the convenience of the witnesses. First, New Hampshire is as convenient as Massachusetts for the parties. The District Courts in Concord and Boston are only about 70 miles apart. Pennick lives in Marblehead, approximately 70 miles from Concord and 17 miles from Boston. Grennon live in New Castle, New Hampshire, about 50 miles to Concord and 60 miles to Boston. In these circumstances, the First Circuit and Massachusetts District Courts have held that convenience of the parties is a neutral factor. <u>Cianbro Corp.</u>, 814 F.2d 7, 11 (1st Cir. 1987) (affirming the District Court's decision transferring action between Maine and New Hampshire District Court, which found "the convenience of the parties to be inconclusive given the proximity of the Courts"); <u>JMTR Enterprises, LLC v Duchin</u>, 42 F.Supp.2d 87, 100 (D. Mass. 1999) (noting that as to convenience of the parties, the difference between Boston and Providence, Rhode Island, located about 50 miles apart, was negligible).

Most of the material witnesses to the renovations to Grennon's home (and the people that were involved in the creative process) live in or around Portsmouth, New Hampshire. Ben Auger Builders is located in Portsmouth. Brendan McNamara is located in Eliot, Maine, ten minutes away. The Federal Court in Concord is about 47 miles from Portsmouth, closer than the 60 miles to Boston. Although both Courts have subpoena power over the witnesses, as they reside within 100 miles of each, see Fed. R. Civ. P. 45, the logistics of travel to and from Boston makes Concord much more convenient for these witnesses. Similarly, any additional witnesses, such as the publisher of Accent on Home and Garden, located in Portsmouth, and HomeWorks Sourcebook, located in Boston, are within the subpoena power of either Court. Id. Accordingly, the convenience of the material witnesses favors New Hampshire.

D.    The Preponderance Of The Material Evidence Is Located In Or Around Portsmouth, New Hampshire

The material evidence in this case—the interior of Grennon's New Castle home—is in New Hampshire. This evidence cannot be moved. To the extent the Court or a jury will need to conduct a view to observe the actual design, both the logistics and the distance favor New Hampshire. In addition, the documents, drawings and records of the projects are located in New Hampshire, either at Grennon's home or at Ben Auger Builders, or just across the border in Maine at Brendan McNamara's office. Accent on Home and Garden magazine is in Portsmouth, New Hampshire, as are the documents relating to its publication of the article on Grennon's home.

Aside from alleging that the Luxury Living Awards reception took place in Boston, Pennick has not alleged that any physical evidence relevant to this action is located in Massachusetts. Accordingly, the location of essentially all the material evidence in New Hampshire weighs heavily in favor of transferring the case to the New Hampshire District Court.

8

See, e.g., Liberty Mut. Ins. Co. v. Gardere & Wynne, L.L.P., 1994 U.S. Dist. LEXIS 17928 *31
(D. Mass., 1994) (finding that all relevant documents and knowledgeable witnesses located
outside Massachusetts weighed heavily in favor of transfer).

   E.  New Hampshire Law is Likely to Apply to the Key Allegations of the Dispute

  A forum's familiarity with the governing law is also a factor that weighs heavily in favor
of transfer.  See Wellons v. Numerica Sav. Bank, FSB, 749 F. Supp. 336, 337 (D. Mass. 1990);
Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286 (7th Cir. 1989) (interest of
justice includes such concerns as trying related litigation together and having a judge who is
familiar with applicable law).  In deciding a motion to transfer under § 1404, a court applies the
choice of law principles of the transferor court in determining which state's substantive law will
apply.  Ferens v. John Deere Co., 494 U.S. 516, 532 (1990).  Under a Massachusetts Choice of
Law analysis, New Hampshire law is likely to apply.

  Massachusetts uses a functional choice-of-law approach for both contract and tort cases.
With respect to contract actions in general, factors to be considered include: (a) the place of
contracting and/or negotiation of the contract, (b) the place of performance, (c) the location of
the subject matter of the contract, and (d) the domicile, residence, nationality, place of
incorporation and place of business of the parties.  With respect to contracts for the rendition of
services, absent a choice of law by the parties, the law of the state where a major portion of the
services are rendered applies.  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.
178 F. Supp. 2d 9, 20-21 (D. Mass. 2001).

  The key allegations in this dispute revolve around the ownership of the design of
Grennon's home and are based on the alleged agreement between Pennick and Grennon.  The
state of New Hampshire has the most significant relationship to Pennick's contract claims

because (a) Grennon and Pennick negotiated their contract there; (b) the services rendered by Pennick were rendered primarily in New Hampshire; and; (c) the subject of the contract was (and still is) located in New Hampshire.

Where both the controlling law and the cause of action are centered in one state, these factors weigh heavily in favor of transfer to that state. Wellons v. Numerica Sav. Bank, FSB 749 F. Supp. 336, 337 (D. Mass. 1990) (holding that transfer to New Hampshire was appropriate because New Hampshire law controlled and the dispute arose in New Hampshire); Campbell Software, Inc. v. Kronos Inc., 1996 WL 124457, *5 (N.D. Ill. 1996) (finding that it was in the interest of justice to transfer a case to Massachusetts when Massachusetts law governed the disputed contract). The applicability of New Hampshire law to the central issues of this case, and the fact that New Hampshire is the nexus of the dispute, weighs heavily in favor of transfer to the New Hampshire District Court.

F.    A Transfer of the Action Will Conserve Judicial Resources and Promote
      Expeditious Resolution of Both Actions

Transfers of actions are warranted to avoid "multiplicity of litigation from a single transaction." 15 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE, JURISDICTION § 3854 (2d Edition 1986). "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." Continental Grain Co. v. the FBL-585, 364 U.S. 19, 26 (1960).

The Massachusetts and New Hampshire actions arise out of a common nucleus of operative facts, and the legal claims are virtually the same. In both cases, two courts are being asked to determine the same parties' rights with respect to property located in New Hampshire. In addition, only the New Hampshire action has important Federal questions pending under both the Copyright and the Lanham Acts that could prove dispositive for all the remaining claims in both cases. If both cases proceed, inconsistent and irreconcilable judgments could be entered.

10

See Wellons, 749 F. Supp. at 338 (finding that it would waste judicial resources to divide a case and try some counts in Massachusetts and some counts in New Hampshire).

Finally, the Massachusetts District Court carries a much heavier workload than that of its sister District in New Hampshire. According to the Federal Court Management Statistics, the Massachusetts District Court is the busiest in the First Circuit, while the New Hampshire court is the fourth busiest. See Federal Judiciary Judicial Caseload Profile Reports for Massachusetts and New Hampshire, attached as Exhibit C and available at http://www.uscourts.gov/cgi-bin/cmsd2004.pl. In 2004, the weighted filings per judge in Massachusetts were 349 cases compared to 279 in New Hampshire—approximately twenty percent fewer, resulting in a much shorter time to trial. Id. For example, in 2003 (the last year in which number where available for the New Hampshire District Court) the median time to trial for civil cases was 17.0 months in New Hampshire compared to 28.5 months in Massachusetts. Id. Accordingly, the parties' interests are better served in having both cases heard in New Hampshire District Court as the case is likely to be litigated more quickly and efficiently without burdening unnecessarily the already crowded and busy Massachusetts District Court docket. See, e.g., Lexington Ins. Co. v. City of Phoenix, 1996 U.S. Dist. LEXIS 11694, *4 (D. Mass., 1996) ("This Court takes very seriously the need to apportion judicial resources efficiently and to avoid unnecessarily burdening [a] District.").

## CONCLUSION

New Hampshire law will control the central issues in this case. The key physical evidence, such as the interior of Grennon's home and virtually all drawings, plans, invoices and other relevant physical evidence, are located in New Hampshire. The activities central to the dispute—the design of Grennon's home and the services rendered by Pennick—also took place in New Hampshire. Further, the Federal claims related to this case are already pending in New Hampshire. Transfer will not create any inconvenience to the parties and witnesses, and the New Hampshire District Court's lighter docket will allow for rapid and efficient resolution of the parties' dispute. Accordingly, the Court should grant Grennon's motion to dismiss this case and

transfer it to the New Hampshire District Court for consolidation and trial with the action already pending there.

Respectfully submitted,
MICHELE GRENNON AND
GRENNON DESIGN
By their attorneys,

McLANE, GRAF, RAULERSON &
MIDDLETON, PROFESSIONAL
ASSOCIATION

Dated:  June 1, 2005

By:   /s/ Eric M. Sommers_____
    Eric M. Sommers, BBO #649611
    900 Elm Street
    P.O. Box 326
    Manchester, NH 03105
    Tel: 603-628-1337
    Fax: 603-625-5650
    eric.sommers@mclane.com

**Certificate of Service**

Thomas E. Dwyer, Esq.
Jacob T. Elberg, Esq.
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA 02210

      I hereby certify that on June 1, 2005, I caused to be served on the above-named counsel of record a copy of the forgoing Memorandum in Support of Motion to Dismiss or Transfer via electronic transmission in accordance with the Court's Administrative Procedures for Electronic Case Filing.

  /s/ Eric M. Sommers_____
Eric M. Sommers

ECF, MAGREC, PATENT

## U.S. District Court
## District of New Hampshire (Concord)
## CIVIL DOCKET FOR CASE #: 1:05-cv-00140-JD

Grennon v. Pennick

Assigned to: Judge Joseph A. DiClerico, Jr

Cause: 15:1125 Trademark Infringement (Lanham Act)

Date Filed: 04/15/2005

Jury Demand: Plaintiff

Nature of Suit: 840 Trademark

Jurisdiction: Federal Question

**Plaintiff**

**Michele Grennon**

represented by **Thomas J. Donovan**
McLane Graf Raulerson & Middleton
900 Elm St
PO Box 326
Manchester, NH 03105
603-625-6464
Email: tdonovan@mclane.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Lisa Pennick**

represented by **Jacob T. Elberg**
Dwyer & Collora LLP
600 Atlantic Ave
Boston, MA 02210
617 371-1000
Email: jelberg@dwyercollora.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven M. Gordon**
Shaheen & Gordon (Concord)
107 Storrs St
PO Box 2703
Concord, NH 03302-2703
603 225-7262
Email: sgordon@shaheengordon.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas E. Dwyer, Jr.**
Dwyer & Collora LLP
600 Atlantic Ave
Boston, MA 02210

617 371-1000
Email: tdwyer@dwyercollora.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/15/2005 | 1 | COMPLAINT against Lisa Pennick with Jury Demand ( Filing fee $ 250 receipt number 027092) filed by Michele Grennon.(cms, ) (Entered: 04/18/2005) |
| 04/18/2005 | | Summons Issued as to Lisa Pennick.(cms, ) (Entered: 04/18/2005) |
| 04/18/2005 | 2 | NOTICE sent. This case has been designated for Electronic Case Filing. All further submissions shall be filed in compliance with the Administrative Procedures for Electronic Case Filing. (cms, ) (Entered: 04/18/2005) |
| 04/18/2005 | 3 | AO 120 Report on the Filing or Determination of an Action Regarding a Patent or Trademark forwarded this date to the Commissioner on Patents and Trademarks, Washington, DC.(cms, ) (Entered: 04/18/2005) |
| 05/04/2005 | 4 | Return of Service Executed *upon Counsel via Waiver of Service* by Michele Grennon on Lisa Pennick. Served/mailed on 4/25/2005. Answer due by 5/16/2005.(Donovan, Thomas) (Entered: 05/04/2005) |
| 05/06/2005 | | Set Deadline(s): Answer due by 6/27/2005 - waiver of service filed. (amm, ) (Entered: 05/06/2005) |
| 05/06/2005 | | Corrective Entry to Set Deadline(s) PUBLIC. Entry corrected by Resetting the previous answer deadline that was entered by plaintiff as the proper waiver of service of summons with specific language was not filed..(amm, ) (Entered: 05/06/2005) |
| 05/13/2005 | 5 | NOTICE of Attorney Appearance by Steven M. Gordon on behalf of Lisa Pennick(Gordon, Steven) (Entered: 05/13/2005) |
| 05/13/2005 | 6 | Assented to MOTION to Extend Time to Answer to June 6, 2005 filed by Lisa Pennick. (Gordon, Steven) (Entered: 05/13/2005) |
| 05/13/2005 | 7 | MOTION for Thomas E. Dwyer, Jr. to Appear Pro Hac Vice filed by Lisa Pennick. Follow up on Objection on 6/2/2005 (Attachments:, # 1 Exhibit (Affidavit) Affidavit of Thomas Dwyer, Jr.)(Gordon, Steven) (Entered: 05/13/2005) |
| 05/13/2005 | 8 | MOTION for Jacob T. Elberg to Appear Pro Hac Vice filed by Lisa Pennick. Follow up on Objection on 6/2/2005 (Attachments:, # 1 Exhibit (Affidavit) Affidavit of Jacob T. Elberg)(Gordon, Steven) (Entered: 05/13/2005) |
| 05/17/2005 | | **ENDORSED ORDER granting 6 Assented to Motion to Extend Time to Answer to June 6, 2005.** *Text of Order: Granted.* **So Ordered by Judge Joseph A. DiClerico Jr. Answer due by 6/6/2005.(ga, )** |

|  |  | **(Entered: 05/17/2005)** |
|---|---|---|
| 05/17/2005 |  | Pro Hac Vice Fee paid: $ 100.00 (Credit Card), receipt number 027244 by Lisa Pennick re: 7 Motion to Appear Pro Hac Vice 8 Motion to Appear Pro Hac Vice. (jeb, ) (Entered: 05/17/2005) |
| 05/17/2005 | 9 | NOTICE of Assent to Motions to Appear Pro Hac Vice by Michele Grennon.(Donovan, Thomas) (Entered: 05/17/2005) |
| 05/18/2005 |  | **ENDORSED ORDER granting 7 Motion to Appear Pro Hac Vice. ECF Registration form sent to PHV attorney along with this order.** *Text of Order: Granted on the condition that the PHV attorney submits an ECF registration form within 10 days.* **So Ordered by Judge Joseph A. DiClerico Jr. Notice of Compliance Deadline set for 5/31/2005. (ga, ) (Entered: 05/18/2005)** |
| 05/18/2005 |  | **ENDORSED ORDER granting 8 Motion to Appear Pro Hac Vice. ECF Registration form sent to PHV attorney along with this order.** *Text of Order: Granted on the condition that the PHV attorney submits an ECF registration form within 10 days.* **So Ordered by Judge Joseph A. DiClerico Jr. Notice of Compliance Deadline set for 5/31/2005. (ga, ) (Entered: 05/18/2005)** |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/01/2005 15:00:23 | | |
| **PACER Login:** | mg0013 | **Client Code:** | 73500 |
| **Description:** | Docket Report | **Search Criteria:** | 1:05-cv-00140-JD |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

```
******************************************  *
Michele Grennon                             *
                                            *
v.                                          *   Civil Action
                                            *   Jury Trial Demanded
Lisa Pennick                                *
                                            *
******************************************  *
```

## COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES

This is an action by Michele Grennon ("Grennon") to obtain injunctive and declaratory relief and to obtain damages arising from false and misleading statements made by Lisa Pennick ("Pennick") and for related claims involving false advertising under the Lanham Act, 15 U.S.C. § 1125, copyright ownership, unfair competition, defamation, commercial defamation, intentional interference with contractual relations, and unjust enrichment.

### PARTIES

1.      The Plaintiff, Grennon, is an individual residing at 98 Beach Hill Road, New Castle, New Hampshire 03854.  Grennon has been providing interior design services under the trade name Grennon Design since March, 2000.  Grennon's services are provided in New Hampshire, Massachusetts, and Maine.

2.      The Defendant, Pennick, is an individual who, upon information and belief, resides at 40 Cloutmans Lane, Marblehead, Massachusetts, 01945.  Pennick provides interior design services under the trade name Lisa Pennick Interiors.  Upon information and belief, Pennick's services are provided throughout New England.

<u>JURISDICTION AND VENUE</u>

3.      This Court has original subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1331 and 28 U.S.C. § 1338 and has supplemental jurisdiction pursuant to 28 U.S.C.

§ 1367 over the remaining claims because this action arises under the copyright laws of the

United States, Title 17, United States Code, the trademark laws of the United States, Title 15,

United States Code, and because the remaining counts have a common nucleus of operative facts

with the counts arising under copyright and trademark.

4.      The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332

because the matter in controversy exceeds $75,000 and is between citizens of different states.

5.      The Court has specific personal jurisdiction over Pennick in New Hampshire,

pursuant to New Hampshire's long-arm statute, RSA 510:4 and in accord with the United States

Constitutional due process requirements.

6.      Venue is proper in this District under 28 U.S.C § 1391(b)(2).

<u>ALLEGATIONS COMMON TO ALL COUNTS</u>

7.      Grennon has extensive experience as an interior designer.  Prior to starting her

own business in March 2000, Grennon worked from 1987 to 2000 for various interior design

businesses, including holding numerous positions as a designer.

8.      In November 1999, Grennon purchased the house at 98 Beach Hill Road, New

Castle, New Hampshire, with an eye toward renovating and redesigning the home for use as her

residence (the "Project").  Grennon had a strong vision of what she wanted in the completed

Project.  Shortly thereafter, around September, 2000, Grennon began assembling a team of

professionals to realize her vision.

2

9.     Grennon initially engaged William Hood as the architect on the Project and Ben Auger ("Auger") of Ben Auger Builders to do the interior installations. Chris Proulx, also of Ben Auger Builders, was the project manager for the Project.

10.     Grennon created a design concept for the house and intended to handle the role of interior designer herself. Despite having had considerable interior design experience, at that point, most of Grennon's design experience had been in working for other businesses. Grennon, at that time, did not have access to the design centers and showrooms, such as the Boston Design Center and others, that she felt would be necessary to realize her design for the Project. To gain this access, Grennon engaged Gayle Reynolds ("Reynolds"), an established interior designer doing business as Gayle Reynolds Design, with whom Grennon had previously worked, and who had access to the resources Grennon desired.

11.     It became clear from the outset, however, that Reynolds' involvement with the Project would not work out. Reynolds' wished to play an active role in creating the design and proposed several design concepts which were rejected by Grennon as conflicting with Grennon's own design for the Project. Reynolds' expressed frustration in not being able to contribute in a more creative manner to the Project and in September, 2000, Grennon terminated Reynolds' involvement in the New Castle Project. Upon parting ways, Reynolds observed that the relationship did not work out, at least in part, because Grennon wanted to do the interior design work herself.

12.     Grennon continued handling the interior design duties. However, due to Reynolds' departure, Grennon still lacked access to many of the showrooms and resources needed to realize her design concept for the Project. Because Pennick had established accounts and access to many design centers and showrooms to which Grennon desired, Pennick was

3

engaged by Grennon around December, 2000.  Pennick provided Grennon with access to many

interior design resources that Grennon did not have access to herself.  Pennick, though an interior

designer herself, did not contribute creatively to the design concept of the Project.  Pennick's

actual role in the Project is best described as that of an interior design resource person.

13.    Grennon's design concept and vision for the Project was clear prior to Pennick's

involvement in the Project.  At no time during Pennick's involvement in the Project did Pennick

prepare any drawings, sketches, etc., illustrating any design concepts, floor plans showing

layouts of movable furniture or furnishings, schematic plans for interior installations such as

cabinet work, built-ins, or other interior decorative details.

14.    Around October or November of 2000, the original architect on the project was

replaced with Brendan McNamara ("McNamara") of Brendan McNamara Residential Design.

McNamara generated all drawings for the interior installations based on Grennon's design

concept.  McNamara worked directly with Grennon at the job site, without involvement by

Pennick, in order to translate Grennon's design concept into architectural plans.

15.    Even after the architectural plans had been completed by Grennon working in

conjunction with McNamara, Pennick did not provide any drawings, material lists, furniture

layouts, plans, or finishing schedule which would flesh out the architectural plans with respect to

colors, finishes, fabrics, floor coverings, wall coverings, window treatments, ceiling treatments,

lighting treatments, or the like, as would typically be provided by the interior designer.

16.    Grennon created her own design concept for the project, and had in fact done so

prior to Pennick's involvement in the Project.  Thus, Pennick's role, observed by all involved in

the project, was as an interior design resource person who provided valuable assistance in

4

shopping, obtaining access to showrooms and design centers, and obtaining items of Grennon's specification.

17.    Ben Auger Builders, who handled the interior installations, generated the finishing schedule for the Project based on input exclusively provided by Grennon. When questions arose during the installation process, Auger and/or members of his staff obtained the necessary information directly from Grennon.

18.    Grennon held on April 9, 2002, an open house at her house to celebrate completion of the Project, which Pennick attended. When a guest at the open house approached Pennick to ask if she was the designer on the project, Pennick indicated that she was not the designer, that it was entirely Grennon's design, and acknowledged that her own role in the Project was that of assisting Grennon in locating the items Grennon wanted.

19.    Recently, Grennon's design has garnered significant attention and praise in the interior design industry. For example, the Project was featured in and appeared on the cover of the January/February 2005 issue of Accent Home and Garden magazine. On April 6, 2005, the media room portion of the Project received a Luxury Living Award presented by HomeWorks Sourcebook.

20.    On March 16, 2005, Grennon received a letter from Pennick's attorney threatening to file a lawsuit against Grennon and alleging that the Project design was created exclusively by Pennick, that Grennon had no role in the design other than that of a homeowner client of Pennick, and that Grennon has falsely claimed to be the designer of the Project. Through a communication from Pennick's attorney dated April 6, 2005, on the afternoon of the Luxury Living Awards, Pennick alleged that it would be unlawful for Grennon to accept such an award. Finally, in a letter dated April 8, 2005, Pennick's attorney again threatened to bring a lawsuit, and

also threatened to file a complaint with the American Society of Interior Designers (ASID) and to seek Grennon's expulsion from that organization.

21.     Pennick has, without the permission of Grennon, taken and shown photographs of the Project to prospective clients in promoting her business and has falsely claimed that the design of the Project was her own.

22.     Pennick has also falsely stated to persons in the design community that Grennon has taken credit for work that Grennon did not do and, including use of the term "steal" to describe Grennon's behavior and, through her attorney in the letter dated April 8, 2005, has made clear that she will continue to do so in the future.

23.     Because of Pennick's false advertising to potential customers and defamatory statements to persons in the design community, Grennon has and will continue to experience lost sales and other harm which cannot be remedied solely through money damages.

COUNT I
(False and Misleading Statements – Lanham Act Section 43(a)(1)(B))

24.     Grennon hereby incorporates the allegations contained in paragraphs 1 to 23 into this Count I.

25.     Pennick has made false and misleading statements about Pennick's and Grennon's respective roles in the Project. Specifically, Pennick's representations that the Project design, as embodied in photographs of the Project employed by Pennick in advertising and marketing her own interior design services are false and misleading because the Project design is not the result of interior design services performed by Pennick. Moreover, Pennick's statements are false and misleading representations that the Grennon was not the designer, when, in fact, Grennon was the actual designer of the Project.

26.     The representations made by Pennick about the photographs in soliciting business deceive, or have the tendency to deceive, consumers into believing that the Project design is Pennick's and, therefore, representative of the taste, quality, and nature of the services provided by Pennick.

27.     The representations made by Pennick to potential customers viewing the photographs are likely to influence consumers in the market for interior design services.  This poses a likelihood of significant and irreparable injury to Grennon because some consumers will choose to engage Pennick believing her to be the designer of the Project, resulting in lost market share, consumer goodwill, and product visibility.

28.     Pennick advertises, markets, distributes, promotes, provides, and sells her interior design services in interstate commerce.

29.     The use of photographs of previous projects and person-to-person contacts are widely used forms of commercial advertising and promotion within the interior design industry.

30.     Pennick made the false and misleading statements with respect to her role in the Project in advertising and promoting her interior design business, knowing that her conduct was wrongful.

31.     As a result, Pennick's conduct violates § 43(a) of Lanham Act, 15 U.S.C. § 1125(a).  Pennick is entitled to preliminary and permanent injunctions, declaratory relief, direct and consequential damages suffered by Grennon, recovery of profits earned by Pennick with respect to advertisements and promotion containing false or misleading statements, up to treble damages, and her costs and reasonable attorneys' fees.

COUNT II

(Copyright Ownership)

32.    Grennon hereby incorporates the allegations contained in paragraphs 1 to 31 into this Count II.

33.    Pennick has threatened to file a lawsuit relating to the Project design asserting that Pennick is, and that not Grennon is not, entitled to attribution and use of the Project design in order to promote, advertise, and sell interior design services.

34.    Because an actual controversy exists between the parties, Grennon is entitled to declaratory relief, pursuant to 28 U.S.C. § 2201, as to the extent of Grennon's authorship and ownership interest in and to the Project design and the extent of Grennon's rights under copyright in and to the Project design as embodied in the completed product and other tangible media including photographs.

35.    Grennon is also entitled to declaratory relief, pursuant to 28 U.S.C. § 2201 as to the extent of Pennick's contribution as an author, owner, or creator of the Project design and whether, Pennick is entitled to any attribution under the copyright laws of the United States based on Pennick's limited role in the Project.

COUNT III

(Unfair Trade Practices)

36.    Grennon hereby incorporates the allegations contained in paragraphs 1 to 35 in this Count III.

37.    Pennick's conduct constitutes unfair, unlawful and fraudulent business practices contrary to N.H. RSA 358-A:2, including, among other offenses, passing off Grennon's design of the Project as the product of her services, representing that her services are of a particular

8

standard or quality, disparaging the goods, services, or business of another by false or misleading representations of fact, and advertising services with an intent not to sell them as advertised.

38.     These wrongful acts have proximately caused and will continue to cause Grennon injury, including loss of future customers, dilution of good will, confusion of potential customers, and injury to her reputation.  These actions will cause imminent irreparable harm and injury to Grennon, for which, Grennon is without an adequate remedy in law.

39.     Grennon is entitled to a preliminary and permanent injunction restraining Pennick, Lisa Pennick Interiors, their agents, employees, and all persons acting with them from engaging in further unlawful conduct.  RSA 358-A:10.

40.     Grennon is entitled to recover damages sustained by it because of Pennick's unlawful acts.  Pennick's actions are willful and knowing violations of RSA 358-A and Grennon is entitled to three times her provable damages.  RSA 358-A:10.

41.     Grennon is entitled to an award of the costs of this suit and reasonable attorneys' fees.  RSA 358-A:10.

<u>COUNT IV</u>
(Defamation)

42.     Grennon hereby incorporates the allegations contained in paragraphs 1 to 41 into this Count IV.

43.     Pennick has communicated, orally and in writing, without privilege, false and defamatory statements that Grennon has improperly and unlawfully taken credit for design work allegedly performed by Pennick, including statements that Grennon has attempted to "steal" credit for Pennick's work.  These statements cause Grennon actual damages in her design profession.

9

44.    In fact, Grennon has taken credit solely for her own design concept as was ultimately realized and manifested in the completed Project.

45.    As a result of Pennick's false statements disparaging Grennon's character, Grennon's reputation has been harmed, causing her damages.

## COUNT V
### (Commercial Disparagement)

46.    Grennon hereby incorporates the allegations contained in paragraphs 1 to 45 into this Count V.

47.    Pennick has communicated orally and in writing, without privilege, false and defamatory statements to Grennon's customers, potential customers, and others within the interior design industry that Grennon and Grennon Design have improperly and unlawfully taken credit for design work allegedly performed by Pennick, including statements that Grennon has attempted to "steal" credit for Pennick's work.  These statements have been made to individuals in the interior design field, and cause Grennon actual damage in her design profession.

48.    Pennick's false statements have harmed Grennon and Grennon Design's business reputation and have resulted in a loss of business.

## COUNT VI
### (Intentional Interference with Contractual Relations)

49.    Grennon hereby incorporates the allegations contained in paragraphs 1 to 48 into this Count VI.

50.    Grennon had an existing or prospective economic relationship with suppliers, vendors, customers, and prospective customers, and others in the design community, including the Boston Design Center and others.

10

51.    Having formerly worked for Grennon, Pennick knew of this economic relationship.

52.    Pennick has intentionally and improperly interfered with this relationship. Upon information and belief, Pennick has contacted Grennon's suppliers, customers, prospective customers, and others in the interior design community and made false statements and misrepresentations, including statements that Pennick was responsible for Grennon's design work on the Project and that Grennon has attempted to steal credit for Pennick's work on the Project.

53.    Pennick's misrepresentations with regard to Grennon's business are harming Grennon and Grennon will continue to suffer damages as a result of Pennick's actions.

COUNT VII
(Unjust Enrichment)

54.    Grennon hereby incorporates the allegations contained in paragraphs 1 to 53 into this Count VII.

55.    Pennick's actions as set forth in detail above have resulted in her unjust enrichment requiring her to make restitution to Grennon.

56.    Pennick should not be allowed to profit or enrich herself at the expense of Grennon contrary to equity.

57.    Pennick's actions to capture business by disparaging Grennon's personal and business reputation and otherwise acting to interfere with Grennon's contractual relations with her suppliers, vendors, customers and potential customers are not in accord with equity or the notion of a fair and competitive marketplace.

58.    Pennick should be prevented from retaining the benefits acquired as a result of her unconscionable acts.

11

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Grennon respectfully requests judgment as follows:

a.      Enter judgment in favor of Grennon;

b.      Preliminarily and permanently enjoin Pennick, Lisa Pennick Interiors, and their agents, servants, employees and all other persons in active concert or privity or in participation with them from making any statement or representation in connection with any advertising, marketing, promoting and selling interior design or related services that Pennick contributed creatively to the design of the Project or played any role in the Project other than that of an interior resource person;

c.      Preliminarily and permanently enjoin Pennick, Lisa Pennick Interiors, their agents, servants, employees and all other persons in active concert or privity or in participation with them from claiming that Pennick created the design concept for the Project, from representing that the Grennon did not create the design concept for Project, or that Grennon is not otherwise entitled to take credit for the design of the Project;

d.      Declare that Grennon is the author and holds the copyright to the Project design as embodied in the completed project, photographs, and other tangible media.

e.      Declare that Pennick is not entitled to credit or attribution as a designer of the Project;

f.      Award Grennon any and all profits that Pennick earned with respect to interior design services falsely advertised using photographs of Grennon's design;

g.      Award Grennon her direct and consequential damages, including lost profits to Grennon's interior design business;

h.      Award Grennon damages, in accordance with RSA 358-A;

12

 i.  Award Grennon punitive and exemplary damages against Pennick;

 j.  Award Grennon for her costs and attorneys' fees; and

 k.  Order such other and further relief as may be just under the circumstances.

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all issues triable by a jury.

Respectfully submitted,
MICHELE GRENNON
By Her Attorneys,

Dated: April 15, 2005

By: /s/ Thomas J. Donovan
  Thomas J. Donovan #664
  tdonovan@mclane.com
  900 Elm Street
  P.O. Box 326
  Manchester, NH 03105
  Tel: 603-628-1337

13

# Commonwealth of Massachusetts
## SUFFOLK SUPERIOR COURT
## Case Summary
## Civil Docket

## Pennick v Grennon et al

Details for Docket: SUCV2005-01468

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | SUCV2005-01468 | **Caption:** | Pennick v Grennon et al |
| **Filing Date:** | 04/15/2005 | **Case Status:** | Disposed: transferred to other court |
| **Status Date:** | 05/24/2005 | **Session:** | Civil B, 3 Pemberton Square, Boston |
| **Lead Case:** | NA | **Case Type:** | Complex |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | F | **Discovery:** | 02/09/2006 |
| **Service Date:** | 07/14/2005 | **Disposition:** | 06/09/2006 |
| **Rule 15:** | 09/12/2005 | **Rule 12/19/20:** | 09/12/2005 |
| **Final PTC:** | 04/10/2006 | **Rule 56:** | 03/11/2006 |
| **Answer Date:** | 09/12/2005 | **Jury Trial:** | YES |

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | SUCV2005-01468 | **Caption:** | Pennick v Grennon et al |
| **Filing Date:** | 04/15/2005 | **Case Status:** | Disposed: transferred to other court |
| **Status Date:** | 05/24/2005 | **Session:** | Civil B, 3 Pemberton Square, Boston |
| **Lead Case:** | NA | **Case Type:** | Services, labor, materials |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | F | **Discovery:** | 02/09/2006 |
| **Service Date:** | 07/14/2005 | **Disposition:** | 06/09/2006 |
| **Rule 15:** | 09/12/2005 | **Rule 12/19/20:** | 09/12/2005 |
| **Final PTC:** | 04/10/2006 | **Rule 56:** | 03/11/2006 |
| **Answer Date:** | 09/12/2005 | **Jury Trial:** | YES |

## Parties Involved

3 Parties Involved in Docket: SUCV2005-01468

**Party Involved:**

| | | **Role:** | Defendant |
|---|---|---|---|
| **Last Name:** | Grennon | **First Name:** | Michelle |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

**Party Involved:**

| | | **Role:** | Defendant |
|---|---|---|---|
| **Last Name:** | Grennon Design | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

**Party Involved:**

| | | **Role:** | Plaintiff |
|---|---|---|---|
| **Last Name:** | Pennick | **First Name:** | Lisa |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

## Attorneys Involved

4 Attorneys Involved for Docket: SUCV2005-01468

**Attorney Involved:**

| | | **Firm Name:** | DWYE01 |
|---|---|---|---|
| **Last Name:** | Elberg | **First Name:** | Jacob T |
| **Address:** | 600 Atlantic Avenue | **Address:** | Federal Reserve Plaza 12th flo |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02110 | **Zip Ext:** | |
| **Telephone:** | 617-371-1000 | **Tel Ext:** | |
| **Fascimile:** | 617-371-1037 | **Representing:** | Pennick, Lisa (Plaintiff) |

**Attorney Involved:**

| | | **Firm Name:** | DWYE01 |
|---|---|---|---|
| **Last Name:** | Dwyer Jr | **First Name:** | Thomas E |

| | | | |
|---|---|---|---|
| **Address:** | 600 Atlantic Avenue | **Address:** | Federal Reserve Plaza 12th flo |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02210 | **Zip Ext:** | |
| **Telephone:** | 617-371-1000 | **Tel Ext:** | |
| **Fascimile:** | 617-371-1037 | **Representing:** | Pennick, Lisa (Plaintiff) |
| | | | |
| **Attorney Involved:** | | **Firm Name:** | MCLA09 |
| **Last Name:** | Sommers | **First Name:** | Eric M |
| **Address:** | 900 Elm Street | **Address:** | PO Box 326 |
| **City:** | Manchester | **State:** | NH |
| **Zip Code:** | 03105 | **Zip Ext:** | 0326 |
| **Telephone:** | 603-628-1337 | **Tel Ext:** | |
| **Fascimile:** | 603-625-5650 | **Representing:** | Grennon, Michelle (Defendant) |
| | | | |
| **Attorney Involved:** | | **Firm Name:** | MCLA09 |
| **Last Name:** | Sommers | **First Name:** | Eric M |
| **Address:** | 900 Elm Street | **Address:** | PO Box 326 |
| **City:** | Manchester | **State:** | NH |
| **Zip Code:** | 03105 | **Zip Ext:** | 0326 |
| **Telephone:** | 603-628-1337 | **Tel Ext:** | |
| **Fascimile:** | 603-625-5650 | **Representing:** | Grennon Design, (Defendant) |

## Calendar Events

No Calendar Events found for Docket: SUCV2005-01468.

There are currently no calendar events associated with this case.

## Full Docket Entries

12 Docket Entries for Docket: SUCV2005-01468

| Entry Date: | Paper No: | Docket Entry: |
|---|---|---|
| 04/15/2005 | 1 | Complaint filed with request for trial by jury |
| 04/15/2005 | | Origin 1, Type A01, Track F. |
| 04/15/2005 | 2 | Civil action cover sheet filed |
| 05/02/2005 | 3 | Affidavit of compliance with long-arm statute with proof of service |

| | | |
|---|---|---|
| 05/02/2005 | 3 | on out of state defendant Michelle Grennon |
| 05/16/2005 | 4 | Motion of defts for extension of time to file ANSWER or otherwise |
| 05/16/2005 | 4 | plead to & incl June l, 2005 (w/o opposition) |
| 05/23/2005 | | MOTION (P#4) ALLOWED (Thomas Murtagh, Justice) Notices mailed May 20, |
| 05/23/2005 | | 2005 (ENTERED 5/19/05) |
| 05/24/2005 | | Copy of petition for removal to U. S. Dist. Court of Defts. Michelle |
| 05/24/2005 | | Grennon, Grennon Design U. S. Dist.#(05-CV-11060WGY). |
| 05/24/2005 | | Case REMOVED this date to US District Court of Massachusetts |

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **MASSACHUSETTS** | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | Numerical Standing | |
| | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | 3,819 | 3,720 | 3,765 | 3,276 | 3,651 | 3,770 | U.S. | Circuit |
| | Terminations | 3,683 | 3,513 | 3,565 | 3,470 | 3,501 | 3,842 | | |
| | Pending | 4,496 | 4,416 | 4,300 | 4,126 | 4,275 | 4,117 | | |
| | % Change in Total Filings — Over Last Year | 2.7 | | | | | | 38 | 2 |
| | % Change in Total Filings — Over Earlier Years | | 1.4 | 16.6 | 4.6 | 1.3 | | 64 | 3 |
| Number of Judgeships | | 13 | 13 | 13 | 13 | 13 | 13 | | |
| Vacant Judgeship Months** | | 8.0 | 7.0 | .0 | .0 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 294 | 285 | 289 | 252 | 281 | 290 | 83 | 2 |
| | FILINGS — Civil | 255 | 246 | 243 | 222 | 249 | 258 | 74 | 2 |
| | FILINGS — Criminal Felony | 27 | 31 | 38 | 30 | 32 | 32 | 93 | 5 |
| | FILINGS — Supervised Release Hearings** | 12 | 8 | 8 | - | - | - | 72 | 2 |
| | Pending Cases | 346 | 340 | 331 | 317 | 329 | 317 | 65 | 1 |
| | Weighted Filings** | 349 | 344 | 354 | 322 | 364 | 347 | 74 | 1 |
| | Terminations | 283 | 270 | 274 | 267 | 269 | 296 | 85 | 3 |
| | Trials Completed | 17 | 15 | 15 | 12 | 13 | 14 | 58 | 2 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 14.9 | 14.3 | 13.4 | 13.2 | 12.6 | 12.4 | 94 | 5 |
| | From Filing to Disposition — Civil** | 9.4 | 10.7 | 11.5 | 10.2 | 10.2 | 10.9 | 42 | 3 |
| | From Filing to Trial** (Civil Only) | 31.7 | 28.5 | 25.5 | 23.8 | 26.4 | 23.0 | 75 | 4 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 215 | 198 | 229 | 275 | 260 | 160 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 5.7 | 5.4 | 6.3 | 7.7 | 7.0 | 4.4 | 68 | 4 |
| | Average Number of Felony Defendants Filed Per Case | 1.5 | 1.4 | 1.6 | 1.6 | 1.5 | 1.7 | | |
| | Jurors — Avg. Present for Jury Selection | 47.60 | 49.14 | 46.26 | 51.51 | 44.40 | 41.94 | | |
| | Jurors — Percent Not Selected or Challenged | 27.5 | 33.4 | 23.2 | 26.2 | 14.8 | 15.2 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 3312 | 97 | 24 | 424 | 43 | 34 | 269 | 503 | 581 | 223 | 492 | 10 | 612 |
| Criminal* | 351 | 29 | 8 | 46 | - | 22 | 96 | ** | 4 | 91 | - | 14 | 41 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **NEW HAMPSHIRE** | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | Numerical Standing | |
| | | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 791 | 885 | 823 | 660 | 812 | 819 | U.S. | Circuit |
| | Terminations | | 816 | 783 | 770 | 753 | 848 | 858 | | |
| | Pending | | 707 | 732 | 645 | 595 | 688 | 677 | | |
| | % Change in Total Filings | Over Last Year | | -10.6 | | | | | 85 | 5 |
| | | Over Earlier Years | | | -3.9 | 19.8 | -2.6 | -3.4 | 71 | 4 |
| Number of Judgeships | | | 3 | 3 | 3 | 3 | 3 | 3 | | |
| Vacant Judgeship Months** | | | .0 | .0 | .0 | .0 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 264 | 296 | 274 | 220 | 271 | 273 | 89 | 5 |
| | | Civil | 174 | 212 | 199 | 175 | 222 | 223 | 85 | 4 |
| | | Criminal Felony | 81 | 71 | 58 | 45 | 49 | 50 | 33 | 1 |
| | | Supervised Release Hearings** | 9 | 13 | 17 | - | - | - | 85 | 4 |
| | Pending Cases | | 236 | 244 | 215 | 198 | 229 | 226 | 86 | 4 |
| | Weighted Filings** | | 279 | 313 | 283 | 235 | 299 | 291 | 87 | 4 |
| | Terminations | | 272 | 261 | 257 | 251 | 283 | 286 | 86 | 4 |
| | Trials Completed | | 11 | 11 | 12 | 16 | 18 | 18 | 89 | 5 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 8.2 | 8.5 | 9.8 | 9.8 | 10.1 | 9.1 | 49 | 3 |
| | | Civil** | 9.0 | 9.8 | 9.4 | 10.6 | 11.2 | 11.5 | 33 | 2 |
| | From Filing to Trial** (Civil Only) | | - | 17.0 | - | 34.0 | 27.0 | 19.5 | - | - |
| OTHER | Civil Cases Over 3 Years Old** | Number | 10 | 9 | 11 | 8 | 14 | 12 | | |
| | | Percentage | 1.9 | 1.6 | 2.2 | 1.6 | 2.5 | 2.2 | 23 | 1 |
| | Average Number of Felony Defendants Filed Per Case | | 1.1 | 1.2 | 1.2 | 1.1 | 1.3 | 1.2 | | |
| | Jurors | Avg. Present for Jury Selection | 48.33 | 34.63 | 57.12 | 40.69 | 38.65 | 29.76 | | |
| | | Percent Not Selected or Challenged | 30.0 | 16.6 | 44.8 | 29.7 | 23.8 | 14.7 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 522 | 39 | - | 105 | 28 | 6 | 26 | 63 | 70 | 33 | 82 | - | 70 |
| Criminal* | 240 | 14 | - | 32 | 2 | 1 | 87 | ** | - | 65 | 2 | 13 | 24 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."