*Suffolk Superior Civil # 05-1468*

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                    SUFFOLK SUPERIOR COURT

*U.S. DIST #*
*05-CV-11060 W G Y.*

|  |  |
|---|---|
| LISA PENNICK, | |
|         Plaintiff | |
| v. | Civil Action No: 05-1468 |
| MICHELE GRENNON, GRENNON DESIGN, | |
|         Defendants | |

### NOTICE OF FILING NOTICE OF REMOVAL

Please note that the defendants Michele Grennon, Grennon Design did, on the 20th day of

May, 2005, file in the United States District Court, District of Massachusetts the attached Notice

of Removal.

Respectfully submitted,
MICHELE GRENNON AND
GRENNON DESIGN
By its attorneys,

McLANE, GRAF, RAULERSON &
MIDDLETON, PROFESSIONAL
ASSOCIATION

Dated: May 19, 2005

By: _____
Eric M. Sommers, BBO #649611
900 Elm Street
P.O. Box 326
Manchester, NH 03105
Tel: 603-628-1337
Fax: 603-625-5650

**Certificate of Service**

I hereby certify that on May 19, 2005, a copy of the foregoing Notice of Filing Notice of Removal was forwarded by first class mail, postage prepaid, to:

Jacob T. Elberg, Esq.
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA 02210

Eric M. Sommers

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

LISA PENNICK,

        Plaintiff

v.                                                                    Civil Action No: _____

MICHELE GRENNON, GRENNON DESIGN

        Defendants

**NOTICE OF REMOVAL**

        Defendants Michele Grennon and Grennon Design (incorrectly named as "Michelle" in the state court action, hereinafter "Michele Grennon"), in support of their Notice of Removal of the above-captioned action to the United States District Court for the District of Massachusetts, respectfully submit that:

        1.      The action entitled <u>Lisa Pennick v. Michelle Grennon, Grennon Design</u>, Civil Action No. 05-1468 was commenced on or about April 15, 2005, by the Plaintiff filing her complaint in the Superior Court in the Commonwealth of Massachusetts, Suffolk County. Service of process was effected on Michele Grennon on April 21, 2005.

        2.      In her Complaint, Lisa Pennick, a Massachusetts resident, asserts various contract and tort claims against the defendant, Michele Grennon, a New Hampshire resident. Plaintiff claims damages exceeding $75,000.

        3.      This Court has original jurisdiction over this case under the provisions of 28 U.S.C. § 1332. Michele Grennon may remove the case to this Court pursuant to 28 U.S.C. § 1441 inasmuch as this is a civil action between citizens of different states in which the matter

in controversy is alleged to exceed $75,000. Removal is timely under the provisions of 28

U.S.C. § 1446(b) in that less than 30 days have passed since Michele Grennon's receipt of

process.

4.     A true copy of this Notice of Removal is being served on the adverse party as of

the date of filing.

5.     A true copy of this Notice of Removal will be promptly filed with the Clerk of the

Suffolk County Superior Court.

6.     Pursuant to 28 U.S.C. § 1446, a copy of the Summons and Complaint, Plaintiff's

Certificate of Service, and Michele Grennon's Assented-To Motion For Extension Of Time To

Answer Or Otherwise Plead are attached hereto and constitute the only process, pleadings, and

orders that have been filed and/or entered in this action. Certified copies of all documents filed

in Superior Court in this matter will soon be filed in this Court.

WHEREFORE, defendants pray:

(a)     upon compliance with the filing and notice
        provisions of 28 U.S.C. § 1446 that this case stand
        removed to this Court;

(b)     the state court shall proceed no further in this case
        unless it is remanded; and

(c)     this Court shall make appropriate orders to
        implement the removal.

Respectfully submitted,
MICHELE GRENNON AND
GRENNON DESIGN
By its attorneys,

McLANE, GRAF, RAULERSON &
MIDDLETON, PROFESSIONAL
ASSOCIATION

2

Dated: May 19, 2005

By: _____
Eric M. Sommers, BBO #649611
900 Elm Street
P.O. Box 326
Manchester, NH 03105
Tel: 603-628-1337
Fax: 603-625-5650
eric.sommers@mclane.com

### Certificate of Service

I hereby certify that on May 19, 2005, a copy of the foregoing Notice of Removal was forwarded by first class mail, postage prepaid, to:

Jacob T. Elberg, Esq.
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA 02210

_____
Eric M. Sommers

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

**SUCV2005-01468**    05-11060-WGY
**Pennick v Grennon et al**

| File Date | 04/15/2005 | Status | Disposed: transfered to other court (dtrans) | |
|---|---|---|---|---|
| Status Date | 05/24/2005 | Session | B - Civil B, 3 Pemberton Square, Boston | |
| Origin | 1 | Case Type | A01 - Services, labor, materials | |
| Lead Case | | Track | F | |

| Service | 07/14/2005 | Answer | 09/12/2005 | Rule12/19/20 | 09/12/2005 |
|---|---|---|---|---|---|
| Rule 15 | 09/12/2005 | Discovery | 02/09/2006 | Rule 56 | 03/11/2006 |
| Final PTC | 04/10/2006 | Disposition | 06/09/2006 | Jury Trial | Yes |

**PARTIES**

**Plaintiff**
Lisa Pennick
Active 04/15/2005

**Private Counsel 657469**
Jacob T Elberg
Dwyer & Collora
600 Atlantic Avenue
Federal Reserve Plaza 12th floor
Boston, MA 02110
Phone: 617-371-1000
Fax: 617-371-1037
Active 04/15/2005 Notify

**Private Counsel 139660**
Thomas E Dwyer Jr
Dwyer & Collora
600 Atlantic Avenue
Federal Reserve Plaza 12th floor
Boston, MA 02210
Phone: 617-371-1000
Fax: 617-371-1037
Active 04/15/2005 Notify

**Defendant**
Michelle Grennon
Served: 04/21/2005
Served (answr pending) 05/02/2005

**Private Counsel 649611**
Eric M Sommers
McLane Graf Raulerson & Middleton
900 Elm Street
PO Box 326
Manchester, NH 03105-0326
Phone: 603-628-1337
Fax: 603-625-5650
Active 05/17/2005 Notify

**Defendant**
Grennon Design
Service pending 04/15/2005

*** See Attorney Information Above ***

**ENTRIES**

| Date | Paper | Text |
|---|---|---|
| 04/15/2005 | 1.0 | Complaint filed with request for trial by jury |

MAS-20030912

guen

Case 1:05-cv-11060-WGY    Document 5-2    Filed 05/31/2005    Page 2 of 2

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

05/24/2005

11:03 AM

## SUCV2005-01468
### Pennick v Grennon et al

| Date | Paper | Text |
|------|-------|------|
| 04/15/2005 | | Origin 1, Type A01, Track F. |
| 04/15/2005 | 2.0 | Civil action cover sheet filed |
| 05/02/2005 | 3.0 | Affidavit of compliance with long-arm statute with proof of service |
| | | on out of state defendant Michelle Grennon |
| 05/16/2005 | 4.0 | Motion of defts for extension of time to file ANSWER or otherwise |
| | | plead to & incl June I, 2005 (w/o opposition) |
| 05/23/2005 | | MOTION (P#4) ALLOWED (Thomas Murtagh, Justice) Notices mailed May 20, |
| | | 2005 (ENTERED 5/19/05) |
| 05/24/2005 | | Copy of petition for removal to U. S. Dist. Court of Defts. Michelle |
| | | Grennon, Grennon Design  U. S. Dist.#(05-CV-11060WGY). |
| 05/24/2005 | | Case REMOVED this date to US District Court of Massachusetts |

**EVENTS**

I HEREBY ATTEST AND CERTIFY ON

_____MAY  24,  2005___, THAT THE

**FOREGOING** DOCUMENT IS A FULL,
**TRUE AND CORRECT COPY** OF THE
**ORIGINAL ON FILE IN MY OFFICE,**
**AND IN MY LEGAL CUSTODY.**

**MICHAEL JOSEPH DONOVAN**
**CLERK / MAGISTRATE**
**SUFFOLK SUPERIOR CIVIL COURT**
**DEPARTMENT OF THE TRIAL COURT**

BY: _____

ASSISTANT CLERK.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                         SUFFOLK SUPERIOR COURT
                                      CIVIL ACTION NO.

LISA PENNICK,

          Plaintiff,

     v.

MICHELLE GRENNON, GRENNON
DESIGN.

          Defendants.



## COMPLAINT & JURY DEMAND

Plaintiff Lisa Pennick ("Pennick") brings this civil action seeking damages she

has suffered as a result of Defendant Michelle Grennon's ("Grennon") unscrupulous

behavior and theft of the professional credit and financial rewards of Pennick's work.

Grennon, a wealthy homeowner, hired Pennick, a professional interior designer, to do

interior design work on her home ("the New Castle Project"). When the work was

completed, Pennick anticipated receiving the benefits of her efforts as the parties had

agreed. Instead, she was humiliated as she watched her client represent that she had

designed the Project herself. Worse, the homeowner used Pennick's work in fraudulent

and misleading advertisements to start a new business, misrepresented her role in the

work to secure and accept professional awards which properly belonged to Pennick, and

claimed credit for Pennick's work as she represented that the work she had financed she

had created as well. Grennon caused substantial harm to Pennick through her deceitful

conduct. Pennick brings the following claims against Grennon: violation of M.G.L. c.

93A, section 11 (triple damages); various common laws counts; declaratory relief under M.G.L. c. 231A, § 1. Pennick seeks injunctive relief, declaratory relief, actual damages, treble damages, and punitive damages based upon these claims. Pennick also seeks declaratory judgments that: (1) Pennick, through Lisa Pennick Interiors, was the interior designer on the New Castle Project, and (2) Grennon was a homeowner-client and not an interior designer on the New Castle Project, and Grennon Design played no role in the New Castle Project.

## Parties

1.    Plaintiff Lisa Pennick is an individual residing at 40 Cloutman's Lane, Marblehead, Massachusetts 01945, and conducting business in Massachusetts under the name of Lisa Pennick Interiors.

2.    Defendant Michelle Grennon is an individual residing at 98 Beach Hill Road, New Castle, New Hampshire, and conducting business under the name of Grennon Design in various towns and counties in Massachusetts, including Boston, Suffolk County.

3.    Grennon Design is a sole proprietorship registered in New Hampshire on May 13, 2003, by Michelle Grennon at 98 Beach Hill Road, New Castle, New Hampshire.

## Jurisdiction

4.    Massachusetts has personal jurisdiction over Defendant Grennon pursuant to M.G.L. c. 233A, and pursuant to M.G.L. c. 93A, § 11 (para. 8), in that the unfair or deceptive acts or practices complained of occurred primarily and substantially within the Commonwealth of Massachusetts.

2

## Factual Allegations

### I.    The Oral Agreement Between Pennick and Grennon

5.    In September, 2000, Grennon contacted Pennick in order to hire Pennick to redesign her New Castle, New Hampshire home. Grennon knew at this time that Pennick conducted business throughout New England as an interior designer through the design firm Lisa Pennick Interiors.

6.    At that time, Grennon was retired.

### A.    The Terms of the Agreement

7.    Grennon informed Pennick that she wanted Pennick to be the interior designer for her home. Grennon informed Pennick that the New Castle home was Grennon's residence.

8.    Grennon did not inform Pennick that Grennon intended to go into business as an interior designer, in competition with Pennick, following the completion of the Project, or that Grennon intended to use Pennick's work to advertise a new interior design business Grennon was planning.

9.    Pennick entered into a contract with Grennon on December 26, 2000, under which Pennick agreed to perform interior design services on Grennon's home in New Castle, New Hampshire. Grennon agreed to pay Pennick for her time. The parties understood that Pennick would be allowed to use the completed Project to advertise Pennick's interior design services. Because that understanding was part of the agreement, Pennick charged Grennon a rate below that which she would have charged for creating an advertisement for Grennon's future work or serving as a "ghost designer" for Grennon.

3

10.    As part of the oral agreement, Pennick gave Grennon a written retainer letter. The "Retainer for Design Services" was written on Lisa Pennick Interiors letterhead, and addressed to Michelle Grennon.

11.    Pennick related a story to Grennon about a prior client who had attempted to take credit for Pennick's work, and Grennon was sympathetic. Grennon's reaction and expression of sympathy led Pennick to feel secure that Grennon would not attempt to take credit for Pennick's work.

### B.    The Work Performed by Pennick

12.    Throughout the completion of the Project, Pennick acted as the sole interior designer. After asking Grennon questions and showing her pictures to determine Grennon's taste, Pennick created interior design plans and ideas for the Project. As clients normally do, Grennon offered comments on Pennick's ideas, offered her own, and approved Pennick's plans. Grennon was no more involved in the creative process than many others of Pennick's homeowner-clients. Pennick worked closely throughout the Project with Ben Auger Builders and Brendan McNamara, the architect on the job site. For a substantial portion of the Project, Pennick worked on the home in New Hampshire while Grennon was on vacation in Florida and other trips.

13.    Pennick performed more than 1,300 hours of interior design work on the New Castle Project. Pennick issued invoices to Grennon for 745 hours of interior design work. Grennon paid Pennick's invoices, and gave no indication to Pennick that she questioned how many hours Pennick had devoted to the Project, or that she had any concerns regarding Pennick's performance as the Project's interior designer.

14.    After determining what interior design plans would be executed, Pennick purchased items for Grennon's home.  As clients normally do, Grennon approved Pennick's purchases.  In some cases, Grennon did not see items until Pennick had purchased them and brought them to Grennon's home.  Grennon was no more involved in the purchasing of items than many other of Pennick's homeowner-clients.

15.    Because Pennick anticipated the Project would be a success and Grennon had agreed that Pennick would be able to use the Project to promote Pennick's interior design business, Pennick agreed to work on the Project at a discounted rate and not to charge Grennon for the entirety of hours Pennick worked.  Because of the parties' agreement regarding the promotion of Pennick's work, Pennick anticipated that this Project would result in substantial future business for her.

16.    Pennick completed the Project in August, 2002.  Grennon gave no indication at any time during the Project that she had any criticism of Pennick's work, or that Grennon believed Pennick was not the sole interior designer on the Project, or that Grennon believed she was something other than a homeowner-client.

### C.    Grennon Breaches the Agreement by Preventing Pennick From Publicizing Her Work

17.    Following the completion of the New Castle Project in August, 2002, Pennick arranged for Kitchen Design, a television show on Home & Garden Television (HGTV), to shoot a segment on the Project.  Pennick put in substantial time and effort to arrange for this publicity to promote her interior design business.

18.    On Friday late afternoon, three days before the show planned to shoot the segment, Grennon called Pennick and demanded that the shoot be cancelled.  Grennon told Pennick that she was too shy to shoot the segment and it was for that reason that she

5

wanted it cancelled. Grennon did not tell Pennick that Grennon intended to use the Project to promote an interior design business she intended to start herself, and that the reason she wanted the shoot cancelled was that allowing the shoot would make it more difficult for Grennon to take credit for Pennick's work.

19.    The late cancellation of the shoot has jeopardized Pennick's relationship with the producer and the show and will interfere with Pennick's ability to promote her work and her business in the future.

**D.    Grennon Starts Her Own Design Firm and Solicits a False Magazine Article Taking Credit For Work Done By Pennick**

20.    Sometime after August 2002, Grennon started her own interior design business called Grennon Design. Grennon, through Grennon Design, offers interior design services in the New England area, and therefore competes with Pennick.

21.    Grennon solicited an article in Accent Home and Garden Magazine. Due to Grennon's efforts, the New Castle Project was the cover story of the January/February 2005 edition of the magazine, and an 11-page article featured the redesign of Grennon's home. See Accent Home and Garden Magazine cover and article attached hereto at Tab A.

22.    Based on information provided by Grennon, the article referred to Grennon as the interior designer on the Project, and made no mention of Pennick's role in the Project, despite including a section entitled "Assembling the Team for Renovation." Grennon intentionally did not include Pennick in the article in order to aid in Grennon's plan to take credit for Pennick's work and pass herself off as the interior designer on the Project.

23.    Grennon did not inform Pennick of her efforts to publicize the New Castle Project.

6

24.    The publication of the article was highly embarrassing to Pennick. Pennick had shown photographs of the Project to clients and prospective clients and described the Project accurately as her own. Individuals approached Pennick after the publication of the article that contradicted Pennick's account of her work on the Project, and have questioned Pennick about her work.

25.    The photographs Grennon gave to Accent Home and Garden Magazine were of Pennick's interior design work. Grennon caused Accent Home and Garden Magazine to give Grennon credit for the work shown in the photographs and not to give credit to Pennick. Grennon did not receive or even request Pennick's permission to publish these pictures of her work.

### E.    Grennon Places an Advertisement in a Magazine Falsely Claiming Pennick's Work to be Her Own

26.    Grennon also placed an advertisement for Grennon Design in the January/February 2005 edition of Accent Home and Garden Magazine. See Advertisement attached hereto at Tab B. The advertisement features a photograph of Pennick's interior design work. Included in the photograph are a couch Pennick designed for Grennon after having designed an identical couch for a previous client, and multiple distinctive items Pennick purchased for the Project without any participation by Grennon other than approval after Pennick placed the items in the New Castle home.

27.    Grennon did not receive or even request Pennick's permission to publish this picture of her work.

28.    The obvious intent of the advertisement was to give potential customers the mistaken impression that the photograph shows work of Grennon Design, although the

work shown is that of Lisa Pennick Interiors.  In fact, upon information and belief, Grennon Design was not in existence at the time the Project was completed.

### F.    Grennon Makes False Statements to Potential Clients To Promote Her Interior Design Business

29.    On March 12, 2005, Grennon held a reception at her New Castle home to promote Grennon Design.  The intent of holding the reception at her New Castle home was to promote the idea that Grennon and Grennon Design was the interior designer on the Project.  The invitation to the reception featured the same picture of Pennick's work used by Grennon in the Accent Home and Garden advertisement.  See Invitation attached hereto at Tab C.  Grennon did not inform Pennick of her plans for the reception or offer to include Pennick in this publicity, and mailed the invitation to potential clients and members of the interior design community, including in Massachusetts.

### G.    Grennon Solicits and Receives Award Under False Pretenses

30.    Grennon entered the New Castle Media Room -- one of the rooms Pennick designed as part of the New Castle Project -- in the competition for the Luxury Living Awards.  The Luxury Living Awards are "a juried home design competition that showcases exceptional living spaces and the talented design professionals who create them," presented by HomeWorks Sourcebook.  See Luxury Living Awards brochure attached hereto at Tab D.

31.    Grennon was aware when she entered the competition that according to HomeWorks Sourcebook, the "Awards [would] be heavily promoted through a high-profile media campaign reaching over 200,000 affluent households."  See Luxury Living Awards website attached hereto at Tab E

32.    HomeWorks Sourcebook, the organizer of the Luxury Living Awards and the source of much of the publicity surrounding the Awards, is located in Boston, Massachusetts. The Luxury Living Awards reception is held in Boston, Massachusetts.

33.    Grennon entered the New Castle Media Room under the team name "Grennon Design."

34.    As part of the application form, Grennon prepared a "Companies Release," which required "signature for <u>all</u> companies/professionals on the team." <u>See</u> Luxury Living Awards Companies Release attached hereto at Tab F.

35.    When Grennon initially prepared the Release to submit the Media Room for the award, she did not include Pennick or Lisa Pennick Interiors, although the form required that the list include "all the major contributors to the Project/living space and that said team members performed the work as represented." <u>See</u> id.

36.    Included in the list of major contributors were multiple businesses Pennick had dealt with throughout the Project, and which had previously never dealt with Grennon.

37.    Grennon did include Grennon Design as a "major contributor to the Project/living space" and as the "team name," although Grennon Design was not in existence at the time the Project was completed.

38.    Only after Pennick learned of the entrance of the New Castle Media Room in the Luxury Living Awards Competition, and informed HomeWorks Sourcebook that Grennon was attempting to steal credit for her work, did Grennon seek to include Pennick's name on the list of "team members." But Grennon then refused to include Pennick on the list when Pennick listed "head interior designer" next to her name and listed "homeowner" next to Grennon's name.

39.    When HomeWorks Sourcebook sought to investigate Pennick's claim that she was the true interior designer of the Project, Grennon denied that Pennick was the sole interior designer on the Project, and continued to present herself as the Project's primary interior designer.  Grennon solicited Ben Auger and Brendan McNamara to support her false representations through promises of future business opportunities.

40.    Grennon falsely told HomeWorks Sourcebook representatives, including John Kenney and Christina Tassi, that Grennon had had all the creative ideas on the New Castle Project, and Pennick was nothing more than a gopher for her -- going to purchase items in stores where Grennon did not have accounts.  In making such statements, Grennon claimed that Pennick, a professional interior designer for several years, is inferior in ability to a brand-new designer (Grennon), and that Pennick had been lying continually about her abilities and her work.

41.    On April 6, 2005, at a reception for hundreds of people throughout the interior design community, the New Castle Media Room was the Gold (second place) winner of the Luxury Living Awards' "Home Theatre" category.  Due to Grennon's false representations, the award was given to Grennon Design.

42.    Pennick's name was listed among the award recipients only after Pennick contacted HomeWorks Sourcebook.  Even then, Grennon's claims caused Pennick to be listed below Grennon, implying that Pennick is inferior in ability to a brand-new designer.

43.    The announcement in front of hundreds of people throughout the interior design community was embarrassing for Pennick, who is well-known throughout the

10

community, because many people throughout the community knew that Pennick had claimed to be the interior designer for the New Castle Project.

44.    Having discussed with Pennick a previous client's actions in taking credit for Pennick's work, and knowing Pennick's reaction to that, Grennon knew that her actions would cause Pennick to experience emotional distress.

45.    Grennon has never paid Pennick for the right to use Pennick's work in Grennon's advertisements or promotional activities, nor for the right to take sole credit for Pennick's work.

46.    Upon information and belief, Grennon and Grennon Design have obtained numerous clients due to Grennon's false representations and publicity falsely taking credit for Pennick's work.  Upon information and belief, in addition to the advertisements, article, reception, Grennon meets with clients and potential clients in an office for which Pennick did the interior design work, yet Grennon leads clients and potential clients to believe Grennon did the work and does not inform them that Pennick created the interior design for the office.

47.    Grennon's actions have caused Pennick significant embarrassment and emotional distress.

## COUNT I - M.G.L. c. 93A, Section 11

48.    Pennick realleges and incorporates herein by reference the allegations of paragraphs 1-47 above.

49.    Both Grennon and Pennick are engaged in trade or commerce.

50.    Grennon, through false representations to Pennick, secured Pennick's services at a discounted rate.

51.    Grennon's false representations to Pennick were unfair and deceptive trade practices which were material, which were undertaken willfully and knowingly, and which caused proximate damage to Pennick in violation of M.G.L. c. 93A, § 11.

52.    Grennon, through false representations to potential clients, took credit for Pennick's work and used that work to compete with Pennick for future business.

53.    Grennon's false representations to potential customers, Accent Home and Garden Magazine or its agents, and HomeWorks Sourcebook were unfair and deceptive trade practices which were material, which were undertaken willfully and knowingly, and which caused proximate damage to Pennick in violation of M.G.L. c. 93A, § 11.

54.    As a result of the foregoing, Pennick has suffered actual damages in an amount to be determined at trial, plus treble damages and attorneys fees.

## COUNT II - BREACH OF CONTRACT

55.    Pennick realleges and incorporates herein by reference the allegations of paragraphs 1-47 above.

56.    Grennon's refusal to allow Pennick to promote her business through the Kitchen Show violates the terms of the oral agreement between Grennon and Pennick.

57.    Grennon's use of Pennick's work not for her own personal enjoyment but for business purposes violates the oral agreement between Grennon and Pennick.

58.    As a result, Pennick has suffered damages in an amount to be determined at trial.

## COUNT III -

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

59.    Pennick realleges and incorporates herein by reference the allegations of paragraphs 1-47 above.

12

60.    Under Massachusetts common law, there exists a covenant of good faith and fair dealing, pursuant to which neither party to a contract shall do anything which has the effect of destroying or damaging the right of the other party to receive the fruits of the contract.

61.    Grennon's false statements to Pennick at the time of the contract's formation, her actions to avoid her contractual obligations to Pennick, and her use of Pennick's services under the contract to compete with Pennick, violate the covenant of good faith and fair dealing.

62.    As a result of Grennon's violations of the covenant of good faith and fair dealing, Pennick has suffered damages in an amount to be determined at trial, plus attorneys' fees.

### COUNT IV - DECEIT

63.    Pennick realleges and incorporates herein by reference the allegations of paragraphs 1-47 above.

64.    Grennon made representations to Pennick that if she performed interior design services on Grennon's home, Pennick would be allowed to use the Project to promote Pennick's business.

65.    At the time Grennon represented that Pennick would be allowed to use the Project to promote Pennick's business, Grennon intended to interfere with any such efforts and instead use the work to promote Grennon's planned business.

66.    Grennon made representations to Pennick that she would not attempt to take credit for Pennick's work.

67.    At the time Grennon represented that she would not attempt to take credit for Pennick's work, Grennon intended to take credit for Pennick's work.

13

68.    Pennick took action on behalf of Grennon in reliance of her representations that Pennick would be able to publicize the Project and that Grennon would not attempt to take credit for Pennick's work.

69.    Grennon received discounted services from Pennick as a result of these actions. As a result, Pennick has suffered damages in an amount to be determined at trial.

## COUNT V - QUANTUM MERUIT/UNJUST ENRICHMENT

70.    Pennick realleges and incorporates herein by reference the allegations of paragraphs 1-47 above.

71.    Pennick performed services for Grennon with the expectation of being able to publicize the Project to promote Pennick's business, and with the expectation that Grennon would not use Pennick's work to compete with her for future clients.

72.    Grennon accepted the services of Pennick with knowledge that Pennick was performing services on her behalf with the expectation of being able to publicize the Project to promote Pennick's business, and with the expectation that Grennon would not use Pennick's work to compete with her for future clients.

73.    Despite Pennick's outstanding work on the Project, Grennon has interfered with Pennick's ability to publicize the Project to promote Pennick's business, and has instead used Pennick's work to compete with her and deprive Pennick of valuable future business.

74.    As a result of Grennon's false representations, unlawful conduct and tortuous activities, Grennon has obtained numerous clients and has received substantial profits.

75.    Grennon has thus been unjustly enriched by her unlawful conduct, and Pennick has suffered damages in an amount to be determined at trial.

## COUNT VI - COPYRIGHT

76.     Pennick realleges and incorporates herein by reference the allegations of paragraphs 1-47 above.

77.     Under Massachusetts common law, common law copyright exists such that the right of property which an author has in his works continues until by publication a right to their use has been conferred upon or dedicated to the public.

78.     Pennick was the author of the interior designs in the New Castle Project.

79.     Pennick did not publish her work in any way that would allow Grennon to publish Pennick's work as her own.

80.     As a result, Pennick has suffered damages in an amount to be determined at trial.

## COUNT VII - DECLARATORY JUDGMENT

81.     Pennick realleges and incorporates herein by reference the allegations of paragraphs 1-47 above.

82.     Grennon has claimed to have been the interior designer on the New Castle Project and to have been other than the homeowner-client on the Project.

83.     Grennon has denied that Pennick was the sole interior designer on the New Castle Project.

84.     Accordingly, an actual and justiciable controversy exists between Pennick and Grennon as to the design of the New Castle Project.

85.     Pennick seeks a declaratory judgment that she, through Lisa Pennick Interiors, was the sole interior designer on the New Castle Project.

86.    Pennick also seeks a declaratory judgment that Grennon was a homeowner-client and not an interior designer on the New Castle Project, and that Grennon Design played no role in the New Castle Project.

## COUNT VIII -

## DEFAMATION, LIBEL, SLANDER, AND INJURIOUS FALSEHOOD

87.    Pennick realleges and incorporates herein by reference the allegations of paragraphs 1-47 above.

88.    Grennon's statements to representatives of HomeWorks Sourcebook that Pennick was nothing more than a gopher on the New Castle Project were defamatory.

89.    Grennon's publication of a list of the parties responsible for the New Castle Project with Pennick's name below Grennon's was defamatory.

90.    Grennon's statements to clients, potential clients, and others within the interior decorating industry that Pennick was nothing more than a gopher on the New Castle Project were defamatory.

91.    Grennon was aware her statements were false when she made them.

92.    Grennon was aware that her statements would caUse harm to Pennick's business and reputation, and would caUse Pennick emotional distress.

93.    Pennick suffered actual injury or harm as a result of Grennon's statements and their publication.

## PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff Lisa Pennick prays for relief as follows:

1.    A judgment, in an amount to be determined at trial, of actual and punitive damages sufficient to account for all damages suffered by Pennick due to Grennon's

16

infringement, breaches of contract, and other unlawful and tortuous activities, plus treble damages under M.G.L. c. 93A, section 11, attorney's fees, interest and costs.

2.    A declaratory judgment that Pennick, through Lisa Pennick Interiors, was the interior designer on the New Castle Project.

3.    A declaratory judgment that Grennon was solely a homeowner-client, and not an interior designer on the New Castle Project, and that Grennon Design played no role in the New Castle Project.

4.    A permanent injunction enjoining Grennon from future actions of publicity involving the New Castle Project and from otherwise taking credit for the New Castle Project as anything other than a homeowner-client of Pennick and Lisa Pennick Interiors.

5.    Such other relief as the Court may deem appropriate.

### Jury Demand

Plaintiff requests a trial by jury on all matters so triable.

Respectfully submitted,

Lisa Pennick

By her attorneys,

Thomas E. Dwyer, Jr. (BBO # 139660)
Jacob T. Elberg (BBO # 657469)
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA  02210
(617) 371-1000
(617) 371-1037 (fax)

I HEREBY ATTEST AND CERTIFY ON
MAY 24, 2005 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY: _____

ASSISTANT CLERK.

Dated: April 15, 2005

17

| CIVIL ACTION COVER SHEET | DOCKET NO(S). 05 1408B | Trial Court of Massachusetts Superior Court Department County: Suffolk |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Lisa Pennick | Michelle Grennon, Grennon Design |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Thomas E. Dwyer, Jr., Jacob T. Elberg, Dwyer & Collora, LLP 600 Atlantic Ave., Boston, MA 02210 (617) 371-1000 Board of Bar Overseers number: JTE657469; TED #139660 | ATTORNEY (if known) Mark A. Wright McLane, Graf, Raulerson & Middleton 900 Elm St., Manchester, NH 03105 (603) 625-6464 |

### Origin code and track designation

Place an x in one box only:
- ☒ 1. F01 Original Complaint
- ☐ 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- ☐ 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- ☐ 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- ☐ 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- ☐ 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A01 | Contract (services) | F | ( X ) Yes     ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . .
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . .
3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . .
4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . .
5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . .
                                                                            Subtotal $ . . . . . . . . . .
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . $ . . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . .
F. Other documented items of damages (describe)
                                                                                   $ . . . . . . . . . . .
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                                                   $ . . . . . . . . . . .
                                                                    TOTAL $ 500,000.00 . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Breach of contract for Interior Design work (see attached statement of damages)

                                                                    TOTAL $ 727,280.00 . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____   DATE: 4/15/05

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

I HEREBY ATTEST AND CERTIFY ON
MAY 24, 2005, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____

ASSISTANT CLERK.

## STATEMENT OF DAMAGES

Breach of contract and breach of covenant of good faith and fair dealing relating to contract entered into on December 26, 2000.  Defendant breached the contract for design services by hiring plaintiff to do interior design work and then taking professional credit for plaintiff's work and depriving plaintiff of her agreed upon right to publicize the work as her own.  Defendant's dishonesty resulted in defendant receiving a lower rate for plaintiff's services and not paying plaintiff for all hours worked.  The plaintiff in the above-captioned matter states that the following are the damages to which she is entitled (and do not include those under non-contract claims such as unjust enrichment M.G.L. c. 93A and common law copyright):

| | |
|---|---|
| Damages: | $167,000 (estimate of amount not paid under contract because of hours reduction) |
| | $60,000 (estimate of amount not paid under contract because of reduced rate) |
| | $500,000 (estimate of damages to plaintiff as a result of not being able to publicize her work) |

| | |
|---|---|
| Total Damages: | $727,000.00 |

| | |
|---|---|
| Costs: | $280.00 (civil complaint filing fee and summons fee) |
| Total Costs: | $    280.00 |

| | |
|---|---|
| **TOTAL:** | **$727,280.00** |

# Commonwealth of Massachusetts

3

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. _____

Lisa Pennick _____ . Plaintiff(s)

v.

Michelle Grennon, Grennon Design _____ . Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon _____ Jacob T. Elberg, Esq.

Dwyer & Collora, LLP

plaintiff's attorney, whose address is 600 Atlantic Ave., Boston, MA 02210 , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse _____, Esquire, at Boston, the _____ 20th _____ day of April _____, in the year of our Lord two thousand _____ and five _____ .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT  (2) MOTOR VEHICLE TORT  (3) CONTRACT  (4) EQUITABLE RELIEF  (5) OTHER

FORM CIV.P. 1 3rd Rev.

**I HEREBY ATTEST AND CERTIFY ON**
MAY 24, 2005 , THAT THE
**FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.**

**MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT**

BY: _____

ASSISTANT CLERK.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

5-19 / 4
5-20

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                    SUFFOLK SUPERIOR COURT

LISA PENNICK,

      Plaintiff

v.                                             Civil Action No: 05-1468

MICHELLE GRENNON, GRENNON DESIGN,

      Defendants

## DEFENDANTS MICHELLE GRENNON AND GRENNON DESIGN'S ASSENTED-TO MOTION FOR EXTENSION OF TIME TO ANSWER OR OTHERWISE PLEAD

Defendants, Michelle Grennon and Grennon Design, with the assent of the plaintiff Lisa Pennick, hereby move for an extension of time to answer or otherwise plead in the above-captioned matter from May 11, 2005 to June 1, 2005. As grounds for this motion, defendants state as follows:

1.    The defendants need additional time to answer or otherwise plead to the Complaint in the above-referenced matter.

2.    Jacob T. Elberg, counsel for the plaintiff, has no objection to this motion, and the motion will not in any way delay the proceedings in this case.

3.    I hereby certify that I have obtained the consent of Jacob T. Elberg, counsel for the plaintiffs to the relief sought in this motion.

WHEREFORE, the Defendants respectfully request that the Court enter an Order:

A.    Granting an extention of time to answer or otherwise plead in this matter from May 11, 2005 to June 1, 2005; and

B.    Granting such further relief as may be just, equitable and appropriate.

Respectfully submitted,
MICHELLE GRENNON AND
GRENNON DESIGN
By its attorneys,

McLANE, GRAF, RAULERSON &
MIDDLETON, PROFESSIONAL
ASSOCIATION

Dated:  May 10, 2005

I HEREBY ATTEST AND CERTIFY ON

__MAY 24, 2005__, THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
ASSISTANT CLERK.

By: _____
Eric M. Sommers, BBO #649611
900 Elm Street
P.O. Box 326
Manchester, NH 03105
Tel: 603-628-1337
Fax: 603-625-5650

## Certificate of Service

I hereby certify that on May 10, 2005, a copy of the foregoing Assented-To Motion For Extension Of Time To Answer Or Otherwise Plead was forwarded by first class mail, postage prepaid, to:

Jacob T. Elberg, Esq.
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA 02210

_____
Eric M. Sommers

2