UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
LISA PENNICK,                       )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )                05-cv-11060-WGY
                                    )
MICHELLE GRENNON, GRENNON           )
DESIGN                              )
                                    )
        Defendants.                 )
_____)

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS AND/OR TRANSFER

### SUMMARY OF ARGUMENT

Plaintiff Lisa Pennick hereby opposes the Defendants' Motion to Dismiss And/Or

Transfer, dated June 1, 2005 [Docket # 3].[1]  As demonstrated below, the Motion should

be denied for three reasons:

1.    This is the first-filed action between the parties and substantial
      deference is due to the Plaintiff's choice of forum. GSI Lumonics,
      Inc. v. Biodiscovery, Inc., 112 F.Supp.2d 99, 104-05 (D. Mass.
      2000) (there is a "strong presumption" in favor of the plaintiff's
      choice of forum);

2.    Massachusetts is the locus of the parties' dispute, virtually all of
      the witnesses reside in Massachusetts, and Massachusetts law will
      control all non-federal legal issues in this case (see 28 U.S.C. §
      1404; Holmes Group, Inc. v. Hamilton Beach/Procter Silex, Inc.,
      249 F.Supp.2d 12, 17, 18 (D. Mass. 2002) (location of dispute,
      convenience of parties, and applicable law are relevant factors in
      determining whether it would be oppressive to the defendants to
      give deference to the plaintiff's forum choice).

_____

[1] Michelle Grennon ("Grennon") and Grennon Design (together, "the Grennon Defendants") have not
answered the Complaint, and the Court would be within its powers to enter a default.  Although
Defendants' motion is styled as a "Motion To Dismiss And/Or Transfer," the Grennon Defendants have
argued only that the case should be transferred for forum non conveniens under 28 U.S.C. § 1404 -- a
rationale clearly outside the realm of Federal Rule of Civil Procedure 12(b).

3.      Pennick is the "true plaintiff" and transfer to New Hampshire would run counter to the strong public interest in promoting settlement negotiations (see Lexington Insurance Co. v. City of Phoenix, Arizona, 1996 WL 463672, *2 (D. Mass. July 31, 1996) (noting substantial public interest in discouraging anticipatory litigation).

# I
# FACTUAL BACKGROUND

## A.      Grennon Retains Pennick to Perform Design Services and Make Purchases In Massachusetts

Pennick is an Interior Designer/Decorator.  She resides in Marblehead, Massachusetts.  Her business, Lisa Pennick Interiors, is also located in Marblehead.  In September 2002, Grennon contacted Pennick in Massachusetts and hired Pennick to design the interior of Grennon's home in New Castle, New Hampshire (the "Project").  In her Declaration filed with this Court [Docket # 3], Grennon admits that she hired Pennick because Pennick was a Massachusetts-based designer with ready access to the Design Center in Boston.  See Declaration of Michele Grennon In Support of Michele Grennon and Grennon Design's Motion to Dismiss or Transfer Venue ("Grennon Declaration"), Attachment #1, at ¶ 5, 7.[2]

For the next two years, Pennick created design concepts for rooms in Grennon's house.  Upon approval from Grennon, Pennick also purchased furniture and other interior decoration items at the Boston Design Center and other stores in Massachusetts.  See Affidavit of Lisa Pennick In Support of Plaintiff Lisa Pennick's Opposition to Defendants' Motion to Transfer Venue ("Pennick Affidavit"), at ¶ 5.  After the Project's

---

[2] In fact, prior to hiring Pennick, Grennon contacted another Massachusetts interior designer, and hired her to work on the Project -- again, because she wanted someone from the Boston area.  Grennon Declaration at ¶ 5, 6.

completion, Pennick took credit for the Project's design and, until the winter of 2005, Grennon never claimed otherwise.

      **B.**    **In Massachusetts, Grennon Wrongfully Takes Sole Credit for the Project and Omits Pennick's Involvement Entirely**

In or around February 2005, without Pennick's knowledge or consent, Grennon entered Pennick's design work on her home in a design contest -- Boston's Luxury Living Awards – sponsored by Boston's HomeWorks Sourcebook magazine.  Pennick Complaint at ¶¶ 30-37.  Grennon listed the contributors to the Project, but omitted Pennick's name and described herself (Grennon Design) as the lead interior designer. Pennick Complaint at ¶¶ 30-37.  Pennick learned about Grennon's actions through two Massachusetts colleagues.  Pennick Affidavit at ¶ 7.  Knowing that many of her colleagues and potential clients in Massachusetts would see the article and read that someone else, the homeowner, was taking credit for the work, Pennick was embarrassed and humiliated by Grennon's actions.

Similarly, Grennon solicited a cover story in Accent Home & Garden Magazine along with a 12-page article devoted to the Project, which identified Grennon as the designer and omitted Pennick's name entirely.  Pennick Complaint at ¶¶ 21-25.  Pennick learned about this from another Massachusetts colleague, while working at the Boston Design Center.  Pennick Affidavit at ¶ 5.

## II
## PROCEDURAL BACKGROUND

### A.    Pennick's Counsel Sends Notice of Intent to File Suit, But Agrees to Grennon's Counsel's Requests to Delay Filing Suit to Pursue Settlement Negotiations

After learning of Grennon's repeated efforts to wrongfully take credit for her work, Pennick contacted and retained counsel. Affidavit of Jacob T. Elberg, Esq. ("Elberg Affidavit") at ¶ 3. On April 8, 2005, undersigned counsel sent to Grennon's counsel by overnight mail a Draft Complaint and a letter stating that Pennick would file suit in Massachusetts on the afternoon of April 12th unless the parties commenced meaningful settlement discussions immediately.[3] Id. at ¶ 7.

Late in the morning on April 12, Grennon's counsel telephoned undersigned counsel. After preliminary settlement discussions, Grennon's counsel said, in words or substance, "please don't file suit until we have had a chance to speak with our client." Id. at ¶¶ 8, 10. Undersigned counsel agreed not to file suit that day -- April 12th -- based on Grennon's counsel's express representation during that telephone call that he would consult with Grennon and get back to undersigned counsel with Grennon's response to the settlement discussions "as soon as possible." Id. at ¶ 10.

When undersigned counsel hadn't heard from Grennon's counsel in the two days following April 12th, undersigned counsel telephoned Grennon's counsel and left a voicemail asking for a status report. Id. at ¶ 11. Near the close of business on April 14th, Grennon's counsel faxed undersigned counsel a terse two-sentence letter saying that Grennon was "considering the [settlement] proposal and [that he would] get back to [me]

---

[3] The correspondence between undersigned counsel and Grennon, and then Grennon's counsel, is detailed in the Elberg Affidavit and its accompanying documents.

as soon as Ms. Grennon has had the opportunity to give some thought to the range of possible solutions." Id. at ¶ 12. In response, undersigned counsel filed a Complaint[4] in Massachusetts Superior Court the next day, April 15.[5] Id. at ¶ 13. Late in the afternoon of April 15th, without notice that Pennick had filed suit in Massachusetts, and without ever getting back to undersigned counsel with the promised report of Grennon's response to the settlement discussion, Grennon attempted an anticipatory filing by filing a complaint -- essentially a declaratory judgment action based on the same facts as this action -- in the District of New Hampshire.[6] Id. at ¶ 13.

---

[4] Pennick's Complaint contains eight counts: M.G.L. c. 93A, Section 11 (count I); Breach of Contract (count II); Breach of Covenant of Good Faith and Fair Dealing (count III); Deceit (count IV); Quantum Meruit/Unjust Enrichment (count V); Common Law Copyright (count VI); Defamation, Libel, Slander, and Injurious Falsehood (count VIII). Pennick also seeks a Declaratory Judgment (count VII) that she, and not Grennon, was the interior designer on the Project.

[5] This action was timely removed to the District of Massachusetts on May 20, 2005.

[6] Grennon's complaint accuses Pennick of damaging her by using the Project in Pennick's marketing efforts in Massachusetts. See Docket # 3, Attachment # 1. Grennon's Complaint seeks a Declaratory Judgment of Copyright Ownership (Count II) and seeks damages for: False and Misleading Statements -- Lanham Act Section 43(a)(1)(B)) (count I); Unfair Trade Practices (count III)[6]; Defamation (count IV); Commercial Disparagement (count V); Intentional Interference With Contractual Relations (Count VI); Unjust Enrichment (Count VII).

Grennon's claim for Unfair Trade Practices is brought under N.H. RSA 358-A -- a statute roughly parallel to M.G.L. c. 93A. However, as the Grennon Complaint does not allege that Pennick committed any acts in New Hampshire, this claim will fail to meet jurisdictional requirements, and will presumably be amended to instead allege a violation of M.G.L. c. 93A.

The Grennon Complaint fails to allege any specific acts sufficient to meet the pleading requirements, never mind the heightened pleading requirement for claims of defamation in Massachusetts. See e.g. Phantom Touring, Inc. v. Affiliated Publications, 953 F.2d 7242, 728 (1st Cir. 1992) cert. denied, 504 U.S. 974, 112 S.Ct. 2942, 119 L.Ed.2d 567 (1992).

Were the Grennon Defendants to have answered and brought these counts as counter-claims, as was required by Rule 12, Pennick would now be moving to dismiss all of the Grennon Defendants' damages claims under Rule 12(b)(6).

# III
# ARGUMENT

**A.    As the First-Filing Plaintiff, Pennick Should Not Be Deprived Of Her Choice Of Forum Unless Litigating in Massachusetts Would Be 'Oppressive' To Grennon**

United States Code Title 28 Section 1404(a), states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "Section 1404(a) is a codification of the doctrine of forum non conveniens."  GSI Lumonics, Inc., 112 F.Supp.2d at 104 (citing Albion v. YMCA Camp Letts, 171 F.3d 1, 2 (1st Cir. 1999). There is no dispute that this Court has subject matter and personal jurisdiction over Pennick and the Grennon Defendants.  Likewise, it is undisputed that venue properly lies in Massachusetts not only for Pennick's claims in this action but also for all claims presently asserted in Grennon's New Hampshire action which could easily and efficiently be litigated as counterclaims in this action.

As this Court has noted, "where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision."  GSI Lumonics, 112 F.Supp.2d at 104 (citing Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987); citing also Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 719 (1st Cir. 1996) ([T]here is a "strong presumption in favor of a plaintiff's forum choice, [against which] the defendant must bear the burden of proving … that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum."); Coady v. Ashcraft & Gerel, 996 F.Supp. 95, 100 (D.Mass. 1998) ("There is a strong presumption in favor of the plaintiff's choice of forum."), rev'd on other grounds, Coady v. Ashcraft

6

& Gerel, No. 99-2165, 2000 WL 1072386, at *9 (1st Cir. Aug. 8, 2000) ("The burden of proof rests with the party seeking transfer; there is a strong presumption in favor of the plaintiff's choice of forum.")

As the Supreme Court held in Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947), a plaintiff should not be deprived of the advantages of her own jurisdiction except upon a clear showing of facts which either "(1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative or legal problems." Cited in GSI Lumonics, 112 F.Supp.2d at 104-05 (noting that the First Circuit in Nowak, 94 F.3d at 720, quoted Koster for that proposition).

In this case, as in GSI Lumonics, the bare fact that Pennick filed suit first in Massachusetts should preclude a transfer of venue to the court of the second filed action absent a showing of oppressiveness. In this case, there is absolutely no evidence that litigating in Massachusetts would be oppressive for Grennon. To the contrary, Massachusetts is the locus of this dispute and would be the most convenient forum to resolve the parties dispute.

B.      **There is a Strong Public Interest in Discouraging Grennon's Attempted "Anticipatory" Filing in New Hampshire**

Since there can be no dispute that Pennick's Complaint was first-filed, the Grennon Defendants instead argue that because both complaints were filed the same day the fact that this case was filed first is immaterial. However, as the Grennon Defendants are well aware, Pennick would have filed her Complaint a month earlier if not for

repeated requests from Grennon's counsel to forbear from filing suit so the parties could discuss settlement. The Grennon Complaint is nothing more than a (still second-filed) anticipatory action, which is in reality a declaratory judgment action filed in an effort to deprive this case's true plaintiff of her choice of venue.

As the Elberg Affidavit and its accompanying correspondence lays out in detail, the only reason Pennick did not file her Complaint in March 2005 was at Grennon's counsel's explicit request. In such a case, the use of attempted-anticipatory filings to deprive the true plaintiff of her choice of forum implicates a significant aspect of the public interest. Lexington Insurance Co. v. City of Phoenix, Arizona, 1996 WL 463672, *2 (D.Mass. July 31, 1996). As this Court has noted,

> A system that permits a potential defendant to gain from anticipatory filing increases the burden on all districts as parties rush to file suit in their home districts rather than attempting to negotiate their differences. [A party's] laudable efforts to warn of impending litigation should not be discouraged by condoning [an anticipatory filing party's] sharp practice.

Id. (noting that "the importance of discouraging anticipatory litigation is widely recognized" and detailing Federal Court precedent on this topic). See also Kleinerman v. Luxtron, Corp., 107 F.Supp.2d 122, 124 (D.Mass. 2000) (disapproving of conduct where one party misleads the other into foregoing litigation in order to negotiate a settlement and then files suit.)

Here, Pennick's counsel delayed filing this action in good faith in the interest of preserving the resources of the parties and the court system. Especially where the anticipatory filing party was still the second to file, it would be contrary to the public interest to deprive Pennick of her choice of forum.

C.     **Massachusetts Is Not Only the Choice Of The First-Filed And True Plaintiff, But Is Also The Proper Forum For Litigating This Dispute**

The Defendants' motion rests on their argument that "oppressiveness and vexation" (the Supreme Court's language in <u>Koster</u>, 330 U.S. at 524) requires that this case be moved a total distance of 68 miles, to a courthouse that is only 12 miles closer to Grennon's home.[7]  Regardless, under the claims presented in the Pennick Complaint as well as the Grennon Complaint, Massachusetts is the true locus of the dispute.  Virtually all of the relevant acts took place in Massachusetts, virtually all of the relevant witnesses work and reside in Massachusetts, and Massachusetts law will govern all claims not based in Federal law.  See <u>Holmes Group, Inc. v. Hamilton Beach/Procter Silex, Inc.</u>, 249 F.Supp.2d 12, 17, 18 (D. Mass. 2002) (when determining whether the moving party has met its burden of demonstrating that defendants' choice of forum is substantially more convenient than that chosen by plaintiff, a court may weigh a number of factors including: "(1) the plaintiff's choice of forum, (2) the relative convenience of the parties, (3) the convenience of the witnesses and location of documents, (4) any connection between the forum and the issues, (5) the law to be applied and (6) the state or public interests at stake," and noting that "transfer of venue is inappropriate … where its effect merely shifts the inconvenience from one party to another.")

---

[7] According to Mapquest, it is 60.82 miles from Grennon's home in New Castle, New Hampshire to this Court, and it is 48.57 miles from Grennon's home to the Federal Courthouse in Concord, New Hampshire.

1.    **The Acts Relevant to Both Complaints Took Place in**
      **Massachusetts**

      a.    **Pennick is a Massachusetts Designer And Was Hired**
            **Because Of Her Contacts At The Boston Design Center**

Pennick lives and works in Marblehead, Massachusetts.  Pennick Affidavit at ¶ 2.

Until Grennon called to make her unsolicited offer, Pennick had had only one previous

New Hampshire client.  Id. at ¶ 3.  Aside from Grennon, Pennick has not had a single

client in New Hampshire since that time.  Id. at ¶ 4.  Grennon admits that she hired

Pennick precisely because of Pennick's Boston contacts:

> I did not have professional relationships with the design
> showrooms and centers in Boston I thought were necessary to
> realize my design.  In order to gain access to those showrooms and
> design centers, I had to hire an interior designer who had the
> contacts I needed.

Grennon Declaration at ¶ 5.

While Pennick of course traveled frequently to New Hampshire to create and

implement her design, the current dispute centers around Pennick's work in

Massachusetts.  After creating her design, Pennick set out to implement it by purchasing

the proper items at the Boston Design Center and other stores in Massachusetts where

Pennick worked with Massachusetts suppliers (many of whom will be witnesses at trial)

to find the products Pennick felt would best complete her design.  Virtually nothing was

purchased in New Hampshire.  Pennick Affidavit at ¶ 5.

Defendants admit that the Boston Design Center was the focal-point of Pennick's

work.  Grennon Complaint at ¶ 10, 12, 16 ("Pennick's role, observed by all involved in

the project, was as an interior design resource person who provided valuable assistance in

shopping, obtaining access to showrooms and design centers [in Boston], and obtaining

items of Grennon's specification.")  In fact, Grennon alleges that Pennick did literally no work in New Hampshire.  Grennon Complaint at ¶ 11.

### b.     Grennon's Marketing Efforts In Massachusetts Form the Basis For Pennick's Allegations

Grennon's marketing efforts have virtually all grown out of Massachusetts. Grennon applied for Boston's Luxury Living Awards, run by HomeWorks Sourcebook, located in Boston.  Grennon pursued the award despite having received a letter from Pennick's counsel asking her to prevent escalating the dispute, and she then attended the Luxury Living Awards reception in Boston, where she made a speech wrongfully claiming credit for Pennick's work.  Grennon Declaration at ¶ 11.

Grennon also worked with Nicole Goldman, who authored the article for Accent Home and Garden magazine.  Grennon Declaration at ¶ 10.  While the Grennon Defendants' Memorandum makes a great deal out of the fact that the magazine is published in Portsmouth (only 12 miles closer to the Federal Court in New Hampshire than this Court), the Memorandum and Grennon's declaration omit mention that Ms. Goldman -- the author of the article and presumably the person at the magazine most familiar with the issues of this case -- resides in Concord, Massachusetts.  Elberg Affidavit at ¶ 15.  What is more, Accent Home and Garden magazine is distributed throughout the Boston area.  Elberg Affidavit at ¶ 16; Pennick Affidavit at ¶ 8.  It was when Pennick's Boston colleagues saw the article in Boston that Pennick first learned Grennon was taking credit for her work in the magazine.

Finally, the Defendants sent invitations featuring Pennick's work to design professionals and potential customers in Massachusetts.  See Exhibit A, invitation addressed to Bernie Pine at Landry & Acari in Salem, Massachusetts.  Again, Pennick

learned of the event because her Massachusetts colleagues received invitations, thus

causing her substantial embarrassment.  Pennick Affidavit at ¶ 9.  As an interior designer

who makes her living from Massachusetts clients, it was the Grennon Defendant's use of

Pennick's work to compete with her on Pennick's home turf that led to this dispute.

**c.    If Grennon's Vague Complaint Alleges Anything, It
Alleges Actions By Pennick In Massachusetts**

All of the marketing of the Project done by Pennick (the supposed basis for the

claims in the Grennon Complaint) took place in Massachusetts, as Pennick never

advertised outside of Massachusetts.  Pennick Affidavit at ¶ 4.  To the extent that the

Grennon Complaint's vague allegations make any claims, they appear to be that Pennick

defamed Grennon in Massachusetts, interfered with Grennon's business relationships in

Massachusetts, and competed with Grennon unfairly in Massachusetts.  Grennon

Complaint at ¶ 52.  Thus, the focal point of all of the claims in the Grennon Complaint is

clearly Boston, Massachusetts.

Certainly there has not been even a single allegation by Grennon that Pennick

made a statement in New Hampshire about her work on the Project, nor that Pennick ever

solicited a New Hampshire client, nor that Pennick made any statements or took any

actions in New Hampshire relating to Grennon's claims.  The only allegation outside of

Massachusetts is a claim that Pennick defamed Grennon when Pennick filed a complaint

on April 20, 2005, with the American Society of Interior Designers in Washington, D.C.,

regarding Grennon's conduct.[8]

---

[8] Although the organization's Ethics Board is currently reviewing Grennon's conduct and considering what
punishment, if any, is warranted, given that such proceedings are private, it is difficult to view the filing of
the complaint as the basis for a claim of defamation.

**2.     Virtually All Of The Potential Witnesses Work at the Boston Design Center -- In The Shadow Of This Courthouse -- And Live In Or Around Boston**

The key disputes in this case center around events in Massachusetts.  The key witnesses will be the owners and employees of stores in Massachusetts who will testify to the time Pennick spent in their stores, considering various options, and discussing design possibilities with the employees before settling on her intended design and/or purchase.  Likewise, according to the Defendants' theory of the case, presumably these same witnesses will instead testify that Pennick showed up with a shopping list that Grennon prepared and that she was merely carrying out Grennon's orders.  These witnesses, located in and around Boston, are within the subpoena power of either Court, but there is no reason for them to be inconvenienced by traveling to New Hampshire when the case's true plaintiff filed first here in Boston.

As discussed above, Nicole Goldman, the author of the magazine article, lives in Concord, Massachusetts.  John Kenney and Christina Tassi of the Luxury Living Awards and HomeWorks Sourcebook also work in Boston and live in the area.  Both will inevitably be asked to testify as to the statements Grennon and Pennick made about their involvement with the project, as Kenney and Tassi attempted to resolve the conflict over the Luxury Living Awards.  Pennick Affidavit at ¶ 10.

In addition, the Grennon Defendants have made clear that Gayle Reynolds -- the designer on the project before Pennick -- will be a crucial witness in the case.  Reynolds worked in Lexington, Massachusetts when she was contacted and hired by Grennon, and continues to live there now.  Elberg Affidavit at ¶ 14.  According to Grennon's declaration, she also hired Reynolds solely to gain access to the Boston Design Center.

Grennon Declaration at ¶¶ 5-6.  She claims that Reynolds ended her involvement with the Project because she was not able to contribute creatively to the Project -- in essence, because she wanted to do more than be a gofer at Boston showrooms.  Grennon Declaration at ¶ 5-7.

Three of Pennick's Massachusetts customers will also be key witnesses.  Before Grennon began taking credit for Pennick's work, Grennon allowed Pennick to bring three of her Massachusetts customers (Maureen Palmer, Sandy Newman, and Liz Talbot) up to the Project to see Pennick's work.  Id.  On each of these visits, Grennon made clear to Pennick's customers that Pennick was the interior designer on the Project, and Grennon was simply her client.  Id.

As the following chart indicates, the key witnesses in this case reside in Massachusetts:

| **Name of Witness**[9] | **Location of Witness** | **Subject-area of Expected Testimony** |
|---|---|---|
| Gayle Reynolds | Massachusetts | Will testify that she was contacted in Massachusetts and hired as the Project's lead designer -- not as a gofer --  before she was replaced with Pennick |
| John Kenney | Massachusetts | Will testify that Grennon applied for and attended Boston's Luxury Living Awards |
| Christina Tassi | Massachusetts | Will testify that Grennon applied for and attended Boston's Luxury Living Awards |
| Nicole Goldman | Massachusetts | Witness to defamation |
| Maureen Palmer | Massachusetts | Witness to Grennon's Acknowledgement of Pennick's role and knowledge of Pennick's marketing |
| Sandy Newman | Massachusetts | [same] |
| Liz Talbot | Massachusetts | [same] |
| Ben Auger | New Hampshire | Will testify to his view as the builder of the parties' roles on the project |
| Brendan McNamara | Maine | Will testify to his view as the architect of |

---

[9] Even this list does not encompass all of the Boston-area witnesses.  Pennick was only on a first-name basis with several salespeople at the Boston Design Center, who will also testify, once located, that the design work was done by Pennick, and in Boston.

| | | the parties' roles on the project |
|---|---|---|
| Lucy Arsnow Leak | Massachusetts | Will testify design work was done at the Boston Design Center (Baker, Knapp & Tubbs) by Pennick |
| Gretchen Schwilk | Massachusetts | Will testify design work was done at the Boston Design Center (Steven King, Inc.) by Pennick |
| David Webster | Massachusetts | Will testify design work was done at the Boston Design Center (Webster & Company) by Pennick |
| Michael Gillick | Massachusetts | Will testify design work was done at the Boston Design Center by Pennick |
| Patricia Mullaney | Massachusetts | Will testify design work was done in Massachusetts (Bygone's of Ireland) by Pennick |
| Karine Jouenne | Massachusetts | Will testify design work was done in Massachusetts (Soft Walls Associates) by Pennick |
| Bernie Pine | Massachusetts | Will testify design work was done in Massachusetts (Landry & Acari) by Pennick |

Given that more than a dozen witnesses in this case are residents of Massachusetts, and only one (Auger) is a resident of New Hampshire, it is clear that the convenience of witnesses weighs heavily in favor of maintaining this action in the forum chosen by its true plaintiff.

> **3.     To The Extent That There Is Relevant Physical Evidence, It Is As Much In Massachusetts As In New Hampshire**

Documentary evidence is located both in New Hampshire and in Massachusetts -- while some documents are located at Grennon's home or at Ben Auger Builders, a substantial number are in Pennick's and Reynolds' possession.  Grennon argues that the key piece of evidence in this case will be the house.  Yet he Grennon Defendants offer no explanation of how seeing the house would benefit the Court or a jury in this case (never mind why photographs would be inadequate), given that the dispute centers around what

Pennick did at the Boston Design Center and other Massachusetts showrooms. Regardless, it is hard to imagine why a difference of 12 miles would have any impact at all on the practicality of conducting a view in this case.

### 4.    Massachusetts Law Will Cover All State Law Claims -- Including Those Brought By the Grennon Defendants

A forum's familiarity with the governing law is also a factor to be weighed in considering a motion to transfer.  See Wellons V. Numerica Sav. Bank, FSB, 749 F.Supp. 336, 337 (D.Mass. 1990); Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286 (7th Cir. 1989) (interest of justice includes such concerns as trying related litigation together and having a judge who is familiar with the applicable law).

Here, all claims will be governed either by Massachusetts law or Federal law. Pennick's Complaint includes a claim under M.G.L. ch. 93A, and her claims for defamation are based most substantially on statements made and/or published in Massachusetts.  To the extent that the Grennon Defendants choose to bring the claims in this Court that Grennon filed in her anticipatory New Hampshire action, Massachusetts law will inevitably apply -- after all, the Grennon Defendants have not alleged that Pennick acted in any way in New Hampshire.

The only conceivable choice of law issue could concern Pennick's breach of contract claim.  But as the Grennon Defendants' Memorandum points out, with respect to contracts for the rendition of services, absent a choice of law by the parties, the law of the state where a major portion of the services are rendered applies.  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 178 F.Supp.2d 9, 20-21 (D.Mass. 2001). Here, there is no disagreement that the major portion of the services were rendered in

Massachusetts -- <u>Grennon actually alleges that Pennick rendered services only in</u>

<u>Massachusetts</u>.  Thus, it is clear that Massachusetts law will apply to the contract claims.

**IV**
**CONCLUSION**

For each of the foregoing reasons, Defendants' Motion to Dismiss And/Or

Transfer should be denied.[10]

**REQUEST FOR ORAL ARGUMENT**

Because Plaintiff believes oral argument may assist the Court in ruling on
Defendants' motion, Plaintiff requests oral argument.

Respectfully submitted,

Lisa Pennick

By her attorneys,

_____/s/ Jacob T. Elberg_____
Thomas E. Dwyer, Jr. (BBO # 139660)
David A. Bunis (BBO # 550570)
Jacob T. Elberg (BBO # 657469)
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA  02210
(617) 371-1000
(617) 371-1037 (fax)

Dated: June 6, 2005

---

[10] Plaintiff certainly agrees that the cases arise out of a common nucleus of operative facts and should be
resolved together.  Plaintiff will thus be filing a motion today in the New Hampshire court to stay that case
until this Court has had the opportunity to rule on Grennon's motion, and asking the New Hampshire Court
to dismiss or transfer that case if this Court denies Grennon's motion to transfer.

17



Copyright © [illegible] / Blind Dog Photo, Inc.





*You are Invited to Join Us*
*For a Mid-Winter Celebration*

*Hosted by:*
*Grennon Design and Auger Building*

*Saturday, March 12th*
*6:00 p.m.*

*At the home of Michele Grennon*
*98 Beach Hill Road, New Castle, NH*

*Please kindly RSVP to 603-436-6728*

*Beach Hill Rd. is a right, 0.8 miles past the entrance to the*
*Wentworth by-the-Sea Hotel traveling north on Rt. 1B*

*Bernie Pine*
*Landry & Acari*
*3 Pleasant St.*
*Salem, MA 01970*

0197043A99  04