UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
LISA PENNICK,                       )
                                    )
    Plaintiff,                      )
                                    )
       v.                           )      05-cv-11060-WGY
                                    )
MICHELLE GRENNON, GRENNON           )
DESIGN                              )
                                    )
    Defendants.                     )
_____)

### AFFIDAVIT OF JACOB T. ELBERG, ESQ. IN SUPPORT OF PLAINTIFF LISA PENNICK'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR TRANSFER

I, Jacob T. Elberg, make the following affidavit under oath based on my personal knowledge:

1.     I am an attorney in good standing authorized to practice law in the Commonwealth of Massachusetts. I am an attorney at the law firm of Dwyer & Collora, LLP, 600 Atlantic Avenue, Boston, Massachusetts, 02210.

2.     I am one of the attorneys at Dwyer & Collora representing the Plaintiff, Lisa Pennick, in the above-entitled action. I submit this affidavit in support of Pennick's Opposition to Defendants Michelle Grennon and Grennon Design's Motion To Dismiss And/Or Transfer dated June 1, 2005.

3.     Before filing this action, I sent a demand letter to Ms. Grennon on March 16, 2005. In that letter I informed Ms. Grennon that "I am prepared to file a complaint on Ms. Pennick's behalf" and informing Ms. Grennon that if she did not contact me to

resolve the suit prior to March 25, 2005, "suit will be instituted." A true copy of the letter is attached hereto as Exhibit A.

    4.    On March 21, 2005, I received a letter from Attorney Mark A. Wright, Esq., informing me that he, and his associate, Scott Rand, Esq., had been retained by Ms. Grennon. Attorney Wright's letter informed me that they were "in the process of reviewing the information contained in [my] letter and gathering facts from [Ms. Grennon]," and stated that they would "forward a more substantive response to [me] shortly." A true copy of that letter is attached hereto as Exhibit B.

    5.    On April 5, 2005, I placed a phone call to Attorney Wright, to ask whether they were yet prepared to engage in settlement discussions, or if I should go ahead and file the complaint. After learning that Attorney Wright was on vacation that week, I spoke with Attorney Rand who told me that Attorney Wright would be returning to the office on April 11th. Attorney Rand further told me that they were in the process of evaluating Ms. Pennick's claims and he requested that I wait to file a complaint until I had the opportunity to have a follow-up conversation with Attorney Wright during the week of April 18, 2005. The contents of this conversation were memorialized in my letter to Attorney Rand on April 6, 2005, a true copy of which is attached hereto as Exhibit C.

    6.    Attorney Rand responded to my April 6, 2005 letter with a letter later that day. In his response, Attorney Rand took no issue with the description of our conversation I had memorialized in my letter, including his request that I wait to file a complaint so that settlement discussions could take place. A true copy of that letter is attached hereto as Exhibit D.

7. On April 8, 2005, I sent a draft Complaint to Attorney Wright, together with a letter informing him that my intention "if I do not hear from [Attorney Wright] by Tuesday, April 12, 2005, that you are interested in discussing a settlement of this matter, is to file the complaint on Ms. Pennick's behalf that afternoon." A true copy of that letter is attached hereto as Exhibit E.

8. Around midday on April 12, 2005, I received a phone call from Attorney Wright and Attorney Rand. Attorney Wright told me that they wanted to discuss the possibility of settlement. I told Attorney Wright that Ms. Pennick took Ms. Grennon's actions very seriously and fully intended to file suit, but that we were interested in resolving the case without the need for litigation. Attorney Wright assured me that he, Attorney Rand, and Ms. Grennon felt the same way.

9. At no time during this conversation on April 12, 2005, or any other conversation with Ms. Grennon's attorneys did anyone mention that Ms. Grennon was considering bringing claims against Ms. Pennick.

10. Throughout the conversation on April 12th, Attorney Wright repeatedly asked me not to file suit so that we could pursue settlement discussions. Attorney Wright specifically requested that I not file suit until he had the chance to speak with Ms. Grennon and get back to me with her views on a possible settlement. I informed Attorney Wright that, in keeping with his request, I would briefly delay filing a complaint to allow him to consult with his client and report back to me as soon as possible with her response. Attorney Wright agreed.

11. After not hearing from Attorney Wright on April 13, 2005, I called and left a voicemail message for him on April 14, 2005 inquiring about the status of settlement.

12. After 4:00 pm on April 14, 2005, I received a terse fax from Attorney Wright stating that Ms. Grennon was "considering the proposal and [that he would] get back to [me] as soon as Ms. Grennon has had an opportunity to give some thought to the range of possible solutions." A true copy of the letter is attached hereto as Exhibit F.

13. On April 19, 2005, I received a phone call from Attorney Tom Donovan, of the same law firm as Attorney Wright and Attorney Rand, informing me that after talking with Attorney Wright and Attorney Rand, he had filed a complaint on Ms. Grennon's behalf on Friday April 15, 2005. According to the District Court of New Hampshire's ECF Help Desk, Ms. Grennon's Complaint was filed electronically on April 15, 2005, at 5:24 p.m. In response, I informed Attorney Donovan that based on the terse fax I had received from Attorney Wright on April 14th, I had became concerned that Grennon might be preparing to file a complaint in New Hampshire, and earlier in the day on April 15th I had filed this action against Grennon in Suffolk Superior Court.

14. Because Ms. Grennon's Complaint referenced Gayle Reynolds, I conducted an Internet search for Ms. Reynolds in May 2005, and learned that Ms. Reynolds lives in Lexington, Massachusetts. I called Ms. Reynolds' residence and confirmed that she has lived and worked in Lexington, Massachusetts for several years, including when she was contacted by Ms. Grennon and worked on the Project.

15. Because Ms. Grennon's Complaint and Declaration referenced Nicole Goldman, on June 1, 2005, I conducted an Internet search for Ms. Goldman, and learned

4

that Ms. Goldman lives in Concord, Massachusetts. I called Ms. Goldman's residence and confirmed that she lives in Concord, Massachusetts.

      16. On June 2, 2005, I contacted Accent Home & Garden Magazine and asked an advertising representative about the magazine's circulation. The advertising representative informed me that the magazine's circulation area covers Boston, Massachusetts, and there are many subscribers as well as newsstands in Boston and the surrounding area.

      Signed this 6th day of June, 2005, under the penalties of perjury.


                                                      _____/s/ Jacob T. Elberg_____
                                                         Jacob T. Elberg

**Dwyer & Collora, LLP**

600 Atlantic Avenue
Boston, Massachusetts 02210-2211
Telephone (617) 371-1000
Fax (617) 371-1037
www.dwyercollora.com

March 16, 2005

Jacob T. Elberg
(617) 371-1029
jelberg@dwyercollora.com

<u>VIA OVERNIGHT MAIL</u>

Ms. Michelle Grennon
PO Box 752
New Castle, NH 03854

and

98 Beach Hill Road
New Castle, NH 03854

Dear Ms. Grennon:

    We have been retained by Lisa Pennick to represent her in all matters arising from your conduct, including specifically your passing off of Ms. Pennick's interior design work as your own.

    Your actions include, but are not limited to: solicitation of an article in Accent Home and Garden Magazine in which credit for the interior design work on your home in New Castle, NH was falsely given to you, the client, and not to Ms. Pennick, the interior designer; submitting the project's media room for an award claiming falsely to have been the interior designer on the project; using photographs of Ms. Pennick's work in advertisements for your new interior design business.

    Your conduct is actionable under numerous provisions of Massachusetts and New Hampshire law, including unjust enrichment, common law copyright, and unfair business practices (Massachusetts Chapter 93A).

    I am prepared to file a complaint on behalf of Ms. Pennick seeking damages for the unjust enrichment you have gained through your unlawful actions, as well as the harm you have caused to Ms. Pennick. That harm includes, but is not limited to, lost business opportunities and emotional distress.

    If you have an interest in attempting to resolve this serious matter prior to the institution of suit, please contact me prior to March 25, 2005. After that date suit will be instituted without further notice to you.

      In the interim I urge you to engage in no further conduct through which you claim -- or encourage others to claim on your behalf -- that your role in the New Castle project was other than that of a client and homeowner, or through which you otherwise publicize the project without clearly crediting Ms. Pennick's substantial contribution as the interior designer.

Sincerely,

Jacob T. Elberg

JTE:dcm



## McLane, Graf, Raulerson & Middleton
*Professional Association*

NINE HUNDRED ELM STREET • P.O. BOX 326 • MANCHESTER, NH 03105-0326
TELEPHONE (603) 625-6464 • FACSIMILE (603) 625-5650

MARK A. WRIGHT
Direct Dial: (603) 628-1311
Internet: mark.wright@mclane.com
Also licensed to practice in Massachusetts

OFFICES
MANCHES...
CONCO...
PORTSMO...

March 21, 2005

*VIA FACSIMILE AND FIRST CLASS MAIL*

Jacob T. Elberg, Esq.
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, Massachusetts 02210-2211

Dear Attorney Elberg:

    Your letter to Michele Grennon dated March 16, 2005, has been forwarded to me for evaluation and response. We are in the process of reviewing the information contained in your letter and gathering facts from our client. Once we have had a chance to review the information and discuss this matter with our client, we will be in a better position to respond to your letter.

    That said, even based on the facts that we have been thus far able to gather, your client would appear to have no protectable proprietary interest in the work that was done on Ms. Grennon's behalf. As we understand it, your client was hired as an interior resource person because she had pre-established accounts at the Boston Design Center, to which Ms. Grennon wanted access. The entire look of the project was Ms. Grennon's design. Essentially, Ms. Grennon told your client what she was looking for and your client would then find it and bring it back. Ms. Grennon would then decide whether it was right or not. In fact, it was Ms. Grennon's insistence on implementing her own interior design that precipitated the departure of the previous designer and Ms. Grennon's subsequent hiring of your client.

    We will forward a more substantive response to you shortly. In the meantime, if you have any evidence to support your client's contention that she, in fact, did the interior design work, such as scaled floor plans (which is a basic for any qualified designer), please forward it to my attention for consideration. Should you have any questions, please feel free to contact me directly at the number above or my associate, Scott Rand, at (603) 628-1461.

Sincerely,

Mark A. Wright

Jacob T. Elberg
March 21, 2005
Page 2

cc:   Michele Grennon
      R. David DePuy, Esq.
      Scott C. Rand, Esq.

M:\DATA\3\38903\MAW\00379651.DOC

**Dwyer & Collora, LLP**

600 Atlantic Avenue
Boston, Massachusetts 02210-2211
Telephone (617) 371-1000
Fax (617) 371-1037
www.dwyercollora.com

April 6, 2005

<u>VIA FAX</u>

Jacob T. Elberg
(617) 371-1029
jelberg@dwyercollora.com

Scott Rand, Esq.
900 Elm Street
P.O. Box 326
Manchester, NH 03105-0326

Dear Mr. Rand:

This letter is to confirm our conversation of yesterday afternoon. I understand that Mark Wright, the partner responsible for this matter, is away this week on vacation, and your firm is attempting to contact further individuals in order to evaluate the claims of Lisa Pennick that I have articulated in my letter to Michelle Grennon of March 16, 2005, and during our conversation yesterday afternoon.

You suggested that we wait to file a complaint until I have a follow-up conversation with Mr. Wright during the week of April 18, 2005. As I expressed to you during our conversation, this is a serious matter, and while Ms. Pennick is willing to discuss resolving this matter prior to the institution of a suit, it is of great concern that Ms. Grennon does not appear to have stopped, or even slowed down her unlawful activity since receiving my letter of March 16, 2005. Since that time, Ms. Grennon has thrown a reception during which time she displayed Ms. Pennick's work as her own, she has continued making false statements to the representatives of the Luxury Living Awards, and she apparently intends tonight to accept an award in front of a large crowd for work done by Ms. Pennick.

While Ms. Pennick is willing to discuss a pre-suit resolution to this matter, it is unreasonable to expect her to do so unless we receive some assurance that Ms. Grennon has ceased her unlawful conduct -- that Ms. Grennon will solicit no further publicity based on the New Castle project; ensure that any publicity already planned -- including magazine articles, advertisements, receptions, etc. -- will be stopped; cease taking credit with clients or potential clients for the interior design of the New Castle Project, until we are able to have a conversation regarding a possible resolution.

With that in mind, I urge you to advise Ms. Grennon not to attend the Luxury Living Awards tonight to accept an award -- such action would greatly increase Ms. Pennick's already substantial damages.

Sincerely,

Jacob T. Elberg

JTE:dcm



## McLane, Graf, Raulerson & Middleton
*Professional Association*

NINE HUNDRED ELM STREET • P.O. BOX 326 • MANCHESTER, NH 03105-0326
TELEPHONE (603) 625-6464 • FACSIMILE (603) 625-5650

SCOTT C. RAND
Direct Dial: (603) 628-1461
Internet: scott.rand@mclane.com
Registered Patent Attorney

OFFICES IN:
MANCHESTER
CONCORD
PORTSMOUTH

April 6, 2005

*VIA ELECTRONIC MAIL*

Jacob T. Elberg, Esq.
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, Massachusetts 02210-2211

Dear Attorney Elberg:

    I am in receipt of your last minute request asking me to advise my client not to attend the Luxury Living Awards. We reiterate our position that the design of the New Castle project is the design of Ms. Grennon and your repeated assertions that Ms. Grennon's activities are unlawful are not well taken. We would remind you that we have requested and, at this point, have not yet been provided with any evidence whatsoever that would indicate that Ms. Pennick contributed to the New Castle project in a capacity beyond that of an interior design resource person and as someone who performed some of the leg work in assisting Ms. Grennon in realizing her design.

    Frankly, the most that you have offered to date was a suggestion during our conversation yesterday that I go over some of the items placed in the home at which point, you indicated, Ms. Pennick's creative input would become clear. However, a review of the specific items purchased as you suggested merely confirms our position that the design was conceived by Ms. Grennon, and not your client. For example, the couch that was purchased was a couch specifically selected by Ms. Grennon. The cabinetry was designed by Ms. Grennon and her architect at the job site and it is our understanding that Ms. Pennick was not present. The art work had already been purchased prior to Ms. Pennick's involvement in the project. Ms. Grennon indicated exactly what window treatments she wanted, including the specific material to be used. Ms. Pennick was present when the carpet was purchased, however, the carpet was solely of Ms. Grennon's design choice. Based on the information that we have gathered to date, we are of the view that your assertion that Ms. Pennick is a major contributor to the design of the New Castle project is, factually, untenable.

Jacob T. Elberg
April 6, 2005
Page 2

      I am not certain that I will be able to contact Ms. Grennon prior to the awards ceremony, but it is my understanding that Ms. Grennon will be attending. If your client will, likewise, be attending, we would ask that you remind your client that any action taken to disrupt the ceremony would cause my client substantial harm. Obviously, the awards ceremony is not an appropriate forum to resolve this matter we would strongly urge you advise you client to govern herself accordingly.

                                     Sincerely,

                                       Scott C. Rand

SCR/

cc:      Michele Grennon
         Mark A. Wright, Esq.
         R. David DePuy, Esq.

**Dwyer & Collora, LLP**

600 Atlantic Avenue
Boston, Massachusetts 02210-2211
Telephone (617) 371-1000
Fax (617) 371-1037
www.dwyercollora.com

Jacob T. Elberg
(617) 371-1029
jelberg@dwyercollora.com

April 8, 2005

<u>VIA FEDERAL EXPRESS</u>

Mark Wright, Esq.
McLane, Graf, Raulerson & Middleton
900 Elm Street
Manchester, NH 03105-0326

Dear Mr. Wright:

  As I am sure you are aware, last week I spoke with your associate, Scott Rand. Mr. Rand informed me that you were away on vacation, and were interested in having a follow-up conversation during the week of April 18, 2005 to discuss this matter further. I informed Mr. Rand that we would be amenable to that, and waiting to proceed with filing a complaint until that time, if we were given assurances that Michelle Grennon would cease her unlawful activity. Because she has not altered her conduct, and instead attended on April 6, 2005 the Luxury Living Awards, further increasing the damages to Ms. Pennick, we cannot agree to a delay of that length.

  Enclosed is a draft of a complaint in this case. My intention, if I do not hear from you by Tuesday, April 12, 2005, that you are interested in discussing a settlement of this matter, is to file the complaint on Ms. Pennick's behalf that afternoon.

  Also on Tuesday afternoon, I will submit to the ASID an ethics complaint on Ms. Pennick's behalf against Ms. Grennon through the ASID's disciplinary body. Ms. Pennick intends to pursue a hearing in front of ASID and will seek disciplinary action against Ms. Grennon, including her expulsion from the organization.

  In addition, Ms. Pennick will be prepared to address any publicity created by such litigation, to ensure that the design community and the community of potential clients are aware that Ms. Grennon has been taking credit for Ms. Pennick's work.

Mr. Mark Wright
Page 2 of 2
April 8, 2005

      Ms. Pennick remains interested in discussing a pre-litigation resolution to this matter. I write this letter -- and send you the enclosed draft before it is filed -- in the hopes of resolving this matter without the necessity of commencing litigation that would assuredly be painful for both parties. Ms. Pennick desires an amicable solution to this matter, and looks forward to the opportunity for reasonable settlement negotiations.

                              Sincerely,

                              Jacob T. Elberg

JTE:dcm
Enc.

cc:    Scott Rand, Esq. (with enclosure)



# McLane, Graf, Raulerson & Middleton

*Professional Association*

NINE HUNDRED ELM STREET • P.O. BOX 326 • MANCHESTER, NH 03105-0326
TELEPHONE (603) 625-6464 • FACSIMILE (603) 625-5650

MARK A. WRIGHT
Direct Dial: (603) 628-1311
Internet: mark.wright@mclane.com
Also licensed to practice in Massachusetts

OFFIC...
MANCH...
CONC...
PORTS...

April 14, 2005

*VIA FACSIMILE AND FIRST CLASS MAIL*

Jacob T. Elberg, Esq.
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, Massachusetts 02210-2211

Dear Attorney Elberg:

In follow up to your voice mail message of this afternoon, we have passed on your comments and our discussion to our client. Our client is considering the proposal and we will get back to you as soon as Ms. Grennon has had an opportunity to give some thought to the range of possible solutions.

Sincerely,

Mark A. Wright

cc: Michele Grennon

M:\DATA\7\73089\maw\00387036.DOC