UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

LISA PENNICK,

                Plaintiff

v.                                                    Civil Action No: 05-CV-11060-WGY

MICHELE GRENNON, GRENNON DESIGN

            Defendants

## **ANSWER AND COUNTERCLAIMS**

      Defendant Michele Grennon and Grennon Design (hereinafter "Grennon") answers

Plaintiff Lisa Pennick's Complaint as follows:

      In the unnumbered, introductory paragraph of her state court Complaint, Pennick make

various legal statements about both herself and Michele Grennon by way of introducing the

allegations contained in the later numbered paragraphs. To the extent that Plaintiff's argument

raises allegations contained in later, numbered, paragraphs, Grennon relies on her responses to

those numbered paragraphs. To the extent that Pennick's argument raises allegations as to her

thoughts and feelings and personal expectations, Grennon lacks knowledge or information

sufficient to form a belief as to the truth of those allegations. Finally, as to any remaining

allegations in that paragraph to which an answer is deemed necessary, those allegations are

denied.

      As to the remainder of the Complaint, Grennon answers the correspondingly numbered

paragraphs of Plaintiff's Complaint as follows:

## Parties

1.      Grennon lacks knowledge or information sufficient to form a belief as to the truth of the allegations that paragraph.

2.      Answering the allegations of paragraph 2, Grennon states that she is an individual who resides at 98 Beach Hill Road, New Castle, New Hampshire 03854 and provides design services primarily in New Hampshire under the name Grennon Design and denies the remaining allegations of that paragraph.

3.      Answering the allegations of paragraph 3, Grennon states that at all relevant times Grennon Design was a trade name of Michele Grennon.

## Jurisdiction

4.      Grennon states that the allegations contained in paragraph 4 purport to state conclusions of law and that, therefore, those allegations require no response.  To the extent that the allegations are deemed to require a response, Grennon denies those allegations.

## Factual Allegations

5.      Answering the allegations of paragraph 5, Grennon states that she initially contacted Plaintiff through William Hood in the fall of 2000, and denies the remaining allegations of that paragraph.

6.      Grennon denies the allegations of paragraph 6.

7.      Answering the allegations of paragraph 7, Grennon admits that Grennon told Pennick that the New Castle Home was Grennon's residence and denies the remaining allegations of that paragraph.

8.      Answering the allegations of paragraph 8, Grennon admits that she and Plaintiff did not discuss whether or not Grennon intended to go into business, and denies the remaining allegation of that paragraph.

9.      Answering the allegations of paragraph 9, Grennon admits that she hired Plaintiff in or around December 26, 2000 and agreed to pay her on an hourly basis.  Grennon denies the remaining allegations of that paragraph.

10.      Answering the allegations of paragraph 10, Grennon admits that Plaintiff gave her invoices from time to time, and denies the remaining allegations that paragraph.

11.      Answering the allegations of paragraph 11, Grennon admits that sometime after she started working for Grennon, Pennick told her about a various problems with a prior client, including an instance where the client allegedly attempted to take credit for Pennick's work. Grennon denies the remaining allegations of that paragraph.

12.      Grennon denies the allegations of paragraph 12.

13.      Answering the allegations of paragraph 13, Grennon admits that Grennon paid Pennick's invoices, but lacks knowledge or information sufficient to form a belief as to the truth regarding the number of hours Pennick may have worked or issued invoices for.  Grennon denies the remaining allegation of that paragraph.

14.      Answering the allegations of paragraph 14, Grennon admits that Plaintiff helped purchase items for Grennon's home, and that in some cases, she did not see items Plaintiff purchased until the Plaintiff brought them to Grennon's home.  Grennon denies the remaining allegations of that paragraph.

15.      Grennon lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15.

3

16.     Grennon denies the allegations of paragraph 16.

17.     Grennon lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17.

18.     Answering the allegations of paragraph 18, Grennon admits that she did not give permission for HGTV to film a segment at her home and denies the remaining allegations of that paragraph.

19.     Grennon lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19.

20.     Answering the allegations of paragraph 20, Grennon admits that Grennon Design was registered as a trade name sometime after August 2002.  Grennon further states that Grennon, and Grennon Design, offer interior design services primarily in New Hampshire. Grennon denies the remaining allegations of that paragraph.

21.     Answering the allegations of paragraph 21, Grennon states that Grennon was interviewed for an article in Accent on Home and Garden magazine, and denies the remaining allegations of that paragraph.

22.     Answering the allegations of paragraph 22, Grennon states that she did not write the article and that the article speaks for itself.  Grennon further states that in the interview for the article, Grennon specifically mentioned Pennick as a person who contributed to the Project. Grennon denies the remaining allegations of that paragraph.

23.     Answering the allegations of paragraph 23, Grennon states that she did not inform Plaintiff that she had been interviewed regarding the renovations to her home and denies the remaining allegations of that paragraph.

24.    Grennon lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24.

25.    Grennon denies the allegations of paragraph 25.

26.    Answering the allegations of paragraph 26, Grennon admits that Grennon placed an advertisement for Grennon Design in Accent on Home and Garden Magazine and that the advertisement speaks for itself.  Grennon denies the remaining allegations of that paragraph.

27.    Grennon denies that Grennon published a picture of Plaintiff's design work.

28.    Grennon denies the allegations of paragraph 28.

29.    Answering the allegations of paragraph 29, Grennon states that she and Auger Building held a "Mid-Winter Celebration" reception at her New Castle home on or about March 12, 2005.  Grennon sent out invitations for the reception to a client and members of the design community, including people in Massachusetts, and the invitation had a picture that was similar to the one that had been used in Grennon' advertisement in Accent on Home and Garden Magazine.  Grennon further states that she did not discuss with Plaintiff her plans for the reception.  Grennon denies the remaining allegations of that paragraph.

30.    Answering the allegations of paragraph 30, Grennon admits that she entered the New Castle Media Room in a competition for the Luxury Living Awards, and denies the remaining allegations of the first sentence of that paragraph.  Grennon lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of that paragraph.

31.    Answering the allegations of paragraph 31, Grennon state that she was aware that HomeWorks Sourcebook makes certain promotional claims about the Awards, but lacks knowledge or information sufficient to form a belief as to the truth of those claims.

32.     Answering the allegations of paragraph 32, Grennon admits that HomeWorks Sourcebook and the Luxury Living Awards are located in Boston, Massachusetts.  Grennon lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of that paragraph.

33.     Grennon denies the allegations of paragraph 33.

34.     Answering the allegations of paragraph 34, Grennon states that she circulated a release form to a number of people, including Lisa Pennick, and denies the remaining allegations of that paragraph.

35.     Grennon denies the allegations of paragraph 35.

36.     Grennon admits the allegations of paragraph 36.

37.     Answering the allegations of paragraph 37, Grennon states that Grennon Design, Michele Grennon's trade name, was listed as a major contributor to the project, and denies the remaining allegations of that paragraph.

38.     Grennon denies the allegations of paragraph 38.

39.     Answering the allegations of paragraph 39, Grennon admits that Grennon told HomeWorks Sourcebook that Plaintiff was not the sole designer for her New Castle home and that the design was primarily Grennon's, and denies the remaining allegations of that paragraph.

40.     Grennon denies the allegations of paragraph 40.

41.     Answering the allegations of paragraph 41, Grennon admits that the New Castle Media Room received a second place award and denies the remaining allegations of that paragraph.

42.     Answering the allegations of paragraph 42, Grennon admits that Plaintiff's name was listed among the award recipients and denies the remaining allegations of that paragraph.

43.     Grennon lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43.

44.     Grennon denies the allegations of paragraph 44.

45.     Grennon denies the allegations of paragraph 45.

46.     Answering the allegations of paragraph 46, Grennon states that Grennon has met with one client in her office at her New Castle Home, and denies the remaining allegations of that paragraph.

47.     Grennon lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 47.

## COUNT 1—M.G.L. c. 93A sec. 11

48.     Grennon repeats and realleges her responses to paragraphs 1 through 47 as if set forth fully herein.

49.     Answering the allegations of paragraph 49, Grennon states the she is in the design business.  Grennon lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of that paragraph.

50.     Grennon denies the allegations of paragraph 50.

51.     Grennon denies the allegations of paragraph 51.

52.     Grennon denies the allegations of paragraph 52.

53.     Grennon denies the allegations of paragraph 53.

54.     Grennon denies the allegations of paragraph 54.

## COUNT II—BREACH OF CONTRACT

55.     Grennon repeats and realleges her responses to paragraphs 1 through 47 as if set forth fully herein.

56.    Grennon denies the allegations of paragraph 56.

57.    Grennon denies the allegations of paragraph 57.

58.    Grennon denies the allegations of paragraph 58.

**COUNT III**
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

59.    Grennon repeats and realleges her responses to paragraphs 1 through 47 as if set forth fully herein.

60.    Answering the allegations of paragraph 60, Grennon state that it sets forth conclusions of law for which no response is required.  To the extent that a response is required, Grennon denies the allegations of that paragraph.

61.    Grennon denies the allegations of paragraph 61.

62.    Grennon denies the allegations of paragraph 62.

**COUNT IV--DECEIT**

63.    Grennon repeats and realleges her responses to paragraphs 1 through 47 as if set forth fully herein.

64.    Grennon denies the allegations of paragraph 64.

65.    Grennon denies the allegations of paragraph 65.

66.    Grennon denies the allegations of paragraph 66.

67.    Grennon denies the allegations of paragraph 67.

68.    Grennon denies the allegations of paragraph 68.

69.    Grennon denies the allegations of paragraph 69.

**COUNT V—QUANTUM MERUIT/UNJUST ENRICHMENT**

70.    Grennon repeats and realleges her responses to paragraphs 1 through 47 as if set forth fully herein.

71.     Grennon denies the allegations of paragraph 71.

72.     Grennon denies the allegations of paragraph 72.

73.     Grennon denies the allegations of paragraph 73.

74.     Grennon denies the allegations of paragraph 74.

75.     Grennon denies the allegations of paragraph 75.

## COUNT VI—COPYRIGHT

76.     Grennon repeats and realleges her responses to paragraphs 1 through 47 as if set forth fully herein.

77.     Answering the allegations of paragraph 77, Grennon states that it sets forth conclusions of law for which no response is required.  To the extent that a response is required, Grennon denies the allegations of that paragraph.

78.     Grennon denies the allegations of paragraph 78.

79.     Grennon denies the allegations of paragraph 79.

80.     Grennon denies the allegations of paragraph 80.

## COUNT VII—DECLARATORY JUDGMENT

81.     Grennon repeats and realleges her responses to paragraphs 1 through 47 as if set forth fully herein.

82.     Grennon admits the allegations of paragraph 82.

83.     Grennon admits the allegations of paragraph 83.

84.     Answering the allegations of paragraph 84, Grennon states that it sets forth conclusions of law for which no response is required.  To the extent that a response is required, Grennon denies the allegations of that paragraph.

85.     Grennon denies allegations of paragraph 85.

86.     Grennon denies the allegations of paragraph 86.

## COUNT VIII
## DEFAMATION, LIBEL, SLANDER, AND INJURIOUS FALSEHOOD

87.     Grennon repeats and realleges her responses to paragraphs 1 through 47 as if set forth fully herein.

88.     Grennon denies the allegations of paragraph 88.

89.     Grennon denies the allegations of paragraph 89.

90.     Grennon denies the allegations of paragraph 90.

91.     Grennon denies the allegations of paragraph 91.

92.     Grennon denies the allegations of paragraph 92.

93.     Grennon denies the allegations of paragraph 93.

## AFFIRMATIVE DEFENSES

In further answering, Grennon states as follows:

### FIRST AFFIRMATIVE DEFENSE

Plaintiff has failed to state claims upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Any harm suffered by the Plaintiff is a result of actions by third parties for whom Grennon had no responsibility or control.

### THIRD AFFIRMATIVE DEFENSE

Any damages caused to the Plaintiff were not caused by Grennon.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of estoppel and waiver.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of contributory or comparative negligence.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate damages.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff has sustained no damage as a result of the any of the actions alleged in the Complaint.

## EIGHTH AFFIRMATIVE DEFENSE

Any and all statement made or alleged to have been made by Grennon were true in all pertinent respects and as such, Plaintiff cannot recover.

## NINTH AFFIRMATIVE DEFENSE

The Plaintiffs' claims are barred by the doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE

The Plaintiffs' claims are barred by the doctrine of laches.

## ELEVENTH AFFIRMATIVE DEFENSES

Plaintiff's M.G.L. c. 93A claims are barred because the alleged acts did not occur primarily and substantially in Massachusetts and/or because Grennon was a consumer at all times relevant to the alleged acts.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's common law copyright and related claims are barred and preempted by the Copyright Act, 17 U.S.C. § 301 et seq.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's defamation claims are barred by truth, privilege, and/or lack of special damages.

<u>FOURTEENTH AFFIRMATIVE DEFENSE</u>

Plaintiff's claims are barred by accord and satisfaction.

<u>FIFTEENTH AFFIRMATIVE DEFENSE</u>

Grennon is entitled to set-off and recoupment against damages, if any, awarded to Plaintiff.

**<u>GRENNON MICHELE GRENNON AND
GRENNON DESIGN'S COUNTERCLAIM</u>**

Grennon states as follows for her counterclaim against Plaintiff:

<u>JURISDICTION AND VENUE</u>

1.      This is a compulsory counterclaim arising out of the transactions and occurrences that are the subject matter of the Complaint.  As a compulsory counterclaim, it is within the ancillary jurisdiction of this Court pursuant to Fed. R. Civ. P. 13.  In addition, this Court has original subject matter jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338 and principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

<u>ALLEGATIONS COMMON TO ALL COUNTS</u>

2.      Grennon has extensive experience as an interior designer.  Prior to starting her own business, Grennon worked from 1987 to 2000 for various interior design businesses, including holding numerous positions as a designer.

3.      In November 1999, Grennon purchased the house at 98 Beach Hill Road, New Castle, New Hampshire, with an eye toward renovating and redesigning the home for use as her residence (the "Project").  Grennon had a strong vision of what she wanted in the completed Project.  Shortly thereafter, Grennon began assembling a team of professionals to realize her vision.

4.    Grennon initially engaged William Hood as the architect on the Project and Ben Auger ("Auger") of Ben Auger Builders to do the interior installations.  Chris Proulx, also of Ben Auger Builders, was the project manager for the Project.

5.    Grennon created a design concept for the house and intended to handle the role of interior designer herself.  Despite having had considerable interior design experience, at that point, most of Grennon's design experience had been in working for other businesses.  Grennon, at that time, did not have access to the design centers and showrooms, such as the Boston Design Center and others, that she felt would be necessary to realize her design for the Project.  To gain this access, Grennon engaged Gayle Reynolds ("Reynolds"), an established interior designer doing business as Gayle Reynolds Design, with whom Grennon had previously worked, and who had access to the resources Grennon desired.

6.    It became clear from the outset, however, that Reynolds' involvement with the Project would not work out.  Reynolds' wished to play an active role in creating the design and proposed several design concepts which were rejected by Grennon as conflicting with Grennon's own design for the Project.  Reynolds' expressed frustration in not being able to contribute in a more creative manner to the Project and in September 2000, Grennon terminated Reynolds' involvement in the New Castle Project.  Upon parting ways, Reynolds observed that the relationship did not work out, at least in part, because Grennon wanted to do the interior design work herself.

7.    Grennon continued handling the interior design duties.  However, due to Reynolds' departure, Grennon still lacked access to many of the showrooms and resources needed to realize her design concept for the Project.  Because Pennick had established accounts and access to many design centers and showrooms to which Grennon desired, Pennick was

engaged by Grennon on or about December 26, 2000. Pennick provided Grennon with access to many interior design resources that Grennon did not have access to herself. Pennick, though an interior designer herself, did not contribute creatively to the design concept of the Project. Pennick's actual role in the Project is better described as that of an interior design resource person.

8.      Grennon's design concept and vision for the Project was clear prior to Pennick's involvement in the Project. At no time during Pennick's involvement in the Project did Pennick prepare any drawings, sketches, etc., illustrating any design concepts, floor plans showing layouts of movable furniture or furnishings, schematic plans for interior installations such as cabinet work, built-ins, or other interior decorative details.

9.      Around October or November of 2000, the original architect on the project was replaced with Brendan McNamara ("McNamara") of Brendan McNamara Residential Design. McNamara generated all drawings for the interior installations based on Grennon's design concept. McNamara worked directly with Grennon at the job site, without involvement by Pennick, in order to translate Grennon's design concept into architectural plans.

10.     Even after the architectural plans had been completed by Grennon working in conjunction with McNamara, Pennick did not provide any drawings, material lists, furniture layouts, plans, or finishing schedule which would flesh out the architectural plans with respect to colors, finishes, fabrics, floor coverings, wall coverings, window treatments, ceiling treatments, lighting treatments, or the like, as would typically be provided by the interior designer.

11.     Grennon created her own design concept for the project, and had in fact done so prior to Pennick's involvement in the Project. Thus, Pennick's role, observed by all involved in the Project, was as an interior design resource person who provided valuable assistance in

shopping, obtaining access to showrooms and design centers, and obtaining items of Grennon's specification.

12.     Ben Auger Builders, who handled the interior installations, generated the finishing schedule for the Project based on input exclusively provided by Grennon. When questions arose during the installation process, Auger and/or members of his staff obtained the necessary information directly from Grennon.

13.     On or around April 9, 2002, Grennon held an open house to celebrate completion of the Project, which Pennick attended. When a guest at the open house approached Pennick to ask if she was the designer on the project, Pennick indicated that she was not the designer, that it was entirely Grennon's design, and acknowledged that her own role in the Project was that of assisting Grennon in locating the items Grennon wanted.

14.     Recently, Grennon's design has garnered significant attention and praise in the interior design industry. For example, the Project was featured in and appeared on the cover of the January/February 2005 issue of <u>Accent Home and Garden</u> magazine. On April 6, 2005, the media room portion of the Project received a Luxury Living Award presented by HomeWorks Sourcebook.

15.     On March 16, 2005, Grennon received a letter from Pennick's attorney threatening to file a lawsuit against Grennon and alleging that the Project design was created exclusively by Pennick, that Grennon had no role in the design other than that of a homeowner client of Pennick, and that Grennon has falsely claimed to be the designer of the Project. Through a communication from Pennick's attorney dated April 6, 2005, on the afternoon of the Luxury Living Awards, Pennick alleged that it would be unlawful for Grennon to accept such an award. Finally, in a letter dated April 8, 2005, Pennick's attorney again threatened to bring a lawsuit, and

also threatened to file a Complaint with the American Society of Interior Designers (ASID) and to seek Grennon's expulsion from that organization.

16.     On information and belief, Pennick has, without the permission of Grennon, taken and shown photographs of the Project to prospective clients in promoting her business and has falsely claimed that the design of the Project was her own.

17.     On information and belief, Pennick has also falsely stated to persons in the design community that Grennon has taken credit for work that Grennon did not do and through her attorney in the letter dated April 8, 2005, has made clear that she will continue to do so in the future.

18.     Because of Pennick's false advertising to potential customers and misleading statements to persons in the design community, Grennon has and will continue to experience lost sales and other harm which cannot be remedied solely through money damages.

## COUNT I
(False and Misleading Statements – Lanham Act Section 43(a)(1)(B))

19.     Grennon hereby incorporates the allegations contained in paragraphs 1 to 18 into this Count I.

20.     Pennick has made false and misleading statements about Pennick's and Grennon's respective roles in the Project.  Specifically, Pennick's representations that the Project design, as embodied in photographs of the Project employed by Pennick in advertising and marketing her own interior design services are false and misleading because the Project design is not the result of interior design services performed by Pennick.  Moreover, Pennick's statements are false and misleading representations that the Grennon was not the designer, when, in fact, Grennon was the actual designer of the Project.

16

21.    The representations made by Pennick about the photographs in soliciting business deceive, or have the tendency to deceive, consumers into believing that the Project design is Pennick's and, therefore, representative of the taste, quality, and nature of the services provided by Pennick.

22.    The representations made by Pennick to potential customers viewing the photographs are likely to influence consumers in the market for interior design services. This poses a likelihood of significant and irreparable injury to Grennon because some consumers will choose to engage Pennick believing her to be the designer of the Project, resulting in lost market share, consumer goodwill, and product visibility.

23.    Pennick advertises, markets, distributes, promotes, provides, and sells her interior design services in interstate commerce.

24.    The use of photographs of previous projects and person-to-person contacts are widely used forms of commercial advertising and promotion within the interior design industry.

25.    Pennick made the false and misleading statements with respect to her role in the Project in advertising and promoting her interior design business, knowing that her conduct was wrongful.

26.    As a result, Pennick's conduct violates § 43(a) of Lanham Act, 15 U.S.C. § 1125(a). Pennick is entitled to preliminary and permanent injunctions, declaratory relief, direct and consequential damages suffered by Grennon, recovery of profits earned by Pennick with respect to advertisements and promotion containing false or misleading statements, up to treble damages, and her costs and reasonable attorneys' fees.

## COUNT II
(Copyright Ownership)

27.     Grennon hereby incorporates the allegations contained in paragraphs 1 to 26 into this Count II.

28.     Pennick has filed a lawsuit relating to the Project design asserting that Pennick is, and that Grennon is not, entitled to attribution and use of the Project design in order to promote, advertise, and sell interior design services.

29.     Because an actual controversy exists between the parties, Grennon is entitled to declaratory relief, pursuant to 28 U.S.C. § 2201, as to the extent of Grennon's authorship and ownership interest in and to the Project design and the extent of Grennon's rights under copyright in and to the Project design as embodied in the completed product and other tangible media including photographs.

30.     Grennon is also entitled to declaratory relief, pursuant to 28 U.S.C. § 2201 as to the extent of Pennick's contribution as an author, owner, or creator of the Project design and whether, Pennick is entitled to any attribution under the copyright laws of the United States based on Pennick's limited role in the Project.

## COUNT III
(Unfair Trade Practices)

31.     Grennon hereby incorporates the allegations contained in paragraphs 1 to 30 in this Count III.

32.     Pennick's conduct constitutes unfair, unlawful and fraudulent business practices contrary to M.G.L. c. 93A, including, among other offenses, passing off Grennon's design of the Project as the product of her services, representing that her services are of a particular standard

or quality, disparaging the goods, services, or business of another by false or misleading representations of fact, and advertising services with an intent not to sell them as advertised.

33.     These wrongful acts have proximately caused and will continue to cause Grennon injury, including loss of future customers, dilution of good will, confusion of potential customers, and injury to her reputation.  These actions will cause imminent irreparable harm and injury to Grennon, for which, Grennon is without an adequate remedy in law.

34.     Grennon is entitled to a preliminary and permanent injunction restraining Pennick, Lisa Pennick Interiors, their agents, employees, and all persons acting with them from engaging in further unlawful conduct.

35.     Grennon is entitled to recover damages sustained by it because of Pennick's unlawful acts.  Pennick's actions are willful and knowing violations of M.G.L. c. 93A and Grennon is entitled to three times her provable damages.  .

36.     Grennon is entitled to an award of the costs of this suit and reasonable attorneys' fees.

## COUNT IV
(Commercial Disparagement)

37.     Grennon hereby incorporates the allegations contained in paragraphs 1 to 36 into this Count IV.

38.     Pennick has communicated orally and in writing, without privilege, false statements to Grennon's customers, potential customers, and others within the interior design industry that Grennon and Grennon Design have improperly and unlawfully taken credit for design work allegedly performed by Pennick, including statements that Grennon has attempted to steal credit for Pennick's work.  These statements have been made to individuals in the interior design field, and cause Grennon actual damage in her design profession.

19

39. Pennick's false statements have harmed Grennon and Grennon Design's business reputation and have resulted in a loss of business.

## COUNT V
(Intentional Interference with Contractual Relations)

40. Grennon hereby incorporates the allegations contained in paragraphs 1 to 39 into this Count V.

41. Grennon had an existing or prospective economic relationship with suppliers, vendors, customers, and prospective customers, and others in the design community, including the Boston Design Center and others.

42. Having formerly worked for Grennon, Pennick knew of this economic relationship.

43. Pennick has intentionally and improperly interfered with this relationship. Upon information and belief, Pennick has contacted Grennon's suppliers, customers, prospective customers, and others in the interior design community and made false statements and misrepresentations, including statements that Pennick was responsible for Grennon's design work on the Project and that Grennon has attempted to steal credit for Pennick's work on the Project.

44. Pennick's misrepresentations with regard to Grennon's business are harming Grennon and Grennon will continue to suffer damages as a result of Pennick's actions.

## COUNT VI
(Unjust Enrichment)

45. Grennon hereby incorporates the allegations contained in paragraphs 1 to 44 into this Count VI.

46. Pennick's actions as set forth in detail above have resulted in her unjust enrichment requiring her to make restitution to Grennon.

47.     Pennick should not be allowed to profit or enrich herself at the expense of Grennon contrary to equity.

48.     Pennick's actions to capture business by disparaging Grennon's personal and business reputation and otherwise acting to interfere with Grennon's contractual relations with her suppliers, vendors, customers and potential customers are not in accord with equity or the notion of a fair and competitive marketplace.

49.     Pennick should be prevented from retaining the benefits acquired as a result of her unconscionable acts.

## PRAYER FOR RELIEF

WHEREFORE, Grennon respectfully requests that the Court:

a.     Dismiss Pennick's Complaint with prejudice;

b.     Enter judgment in favor of Grennon on each of her counterclaims;

c.     Preliminarily and permanently enjoin Pennick, Lisa Pennick Interiors, and their agents, servants, employees and all other persons in active concert or privity or in participation with them from making any statement or representation in connection with any advertising, marketing, promoting and selling interior design or related services that Pennick contributed creatively to the design of the Project or played any role in the Project other than that of an interior resource person;

d.     Preliminarily and permanently enjoin Pennick, Lisa Pennick Interiors, their agents, servants, employees and all other persons in active concert or privity or in participation with them from claiming that Pennick created the design concept for the Project, from representing that the Grennon did not create the design concept for Project, or that Grennon is not otherwise entitled to take credit for the design of the Project;

      e.      Declare that Grennon is the author and holds the copyright to the Project design as embodied in the completed project, photographs, and other tangible media.

      f.      Declare that Pennick is not entitled to credit or attribution as a designer of the Project;

      g.      Award Grennon any and all profits that Pennick earned with respect to interior design services falsely advertised using photographs of Grennon's design;

      h.      Award Grennon her direct and consequential damages, including lost profits to Grennon's interior design business;

      i.      Award Grennon damages, in accordance with M.G.L. c. 93A;

      j.      Award Grennon punitive and exemplary damages against Pennick;

      k.      Award Grennon for her costs and attorneys' fees; and

      l.      Order such other and further relief as may be just under the circumstances.

## DEMAND FOR JURY TRIAL

Grennon hereby demands a trial by jury on all issues triable by a jury.

Respectfully submitted,

MICHELE GRENNON AND
GRENNON DESIGN
By her attorneys,

McLANE, GRAF, RAULERSON &
MIDDLETON, PROFESSIONAL
ASSOCIATION

Dated: August 3, 2005

By:  __/s/ Eric M. Sommers_____
    Eric M. Sommers, BBO #649611
    Thomas J. Donovan, Pro Hac Vice
    900 Elm Street
    P.O. Box 326
    Manchester, NH 03105
    Tel: 603-628-1337
    Fax: 603-625-5650
    eric.sommers@mclane.com

## Certificate of Service

Thomas E. Dwyer, Jr.
David A. Bunis
Jacob T. Elberg, Esq.
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA 02210

       I hereby certify that on August 3, 2005, I caused to be served on the above-named counsel of record a copy of the forgoing Answer And Counterclaims via electronic transmission in accordance with the Court's Administrative Procedures for Electronic Case Filing.


                                    _____/s/ Eric M. Sommers_____
                                      Eric M. Sommers